**ORANGE & N. W. R. CO. v. HARRIS et al.**
**No. 2177.**

Court of Civil Appeals of Texas. Beaumont.
Feb. 9, 1933.

Rehearing Denied March 8, 1933.

O. R. Sholars, of Orange, W. G. Reeves and Chas. T. Butler, both of Beaumont, and Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Dies, Stephenson & Dies, of Orange, for appellees.

O'QUINN, Justice.

Appellees sued appellant for damages for personal injuries to Luther Harris resulting from a collision between an automobile in which he was riding and a freight car which partially obstructed a street crossing in the city of Orange. From a judgment for said appellee, this appeal was taken.

Appellees alleged that at about 7 o'clock p. m. on December 16, 1927, Luther Harris and a lady, Nellie Morris, were driving along College street in the city of Orange, Tex., and suddenly collided with a flat car operated by appellant which obstructed and occupied all but about 4 feet of the street crossing where said street crossed the railway line of appellant; that as the result of said collision said Luther Harris was thrown violently against the steering wheel and dashboard of the automobile, thereby causing him the injuries complained of in his petition.

Appellee alleged that his injuries proximately resulted from the following acts of negligence on the part of appellant:

(1) In permitting the flat car to obstruct and remain on the public street crossing for more than five minutes, in violation of an ordinance of the city of Orange, which ordinance was pleaded by appellee. It was further alleged that said act of appellant was negligence per se.

(2) In stationing said flat car on said railroad track so that it obstructed all of said street crossing, but about 4 feet, same being at a point where a great many people traveled in different directions constantly.

(3) In failing to place a sufficiently bright ·light on or near said flat car or other signal to notify and warn the public and those traveling over said street of the presence of said car on said crossing.

(4) In failing to have some one stationed at or near said flat car to notify and warn

persons traveling said street over said crossing of the presence of said flat car.

(5) In failing to use such means and exert ordinary care, under the circumstances, as would prevent persons traveling on and over said crossing from colliding with said flat car.

Appellant answered by general demurrer; special exceptions to paragraphs 3 and 4 of appellee's petition, being that portion wherein was pleaded the ordinance of the city of Orange relative to trains obstructing street crossings for more than five minutes; general demurrer; and a plea of contributory negligence on the part of appellee Luther Harris, consisting of the following:

(a) In driving his automobile upon the public highway with poor or ineffective brakes.

(b) In driving his automobile upon the public highway with poor or insufficient lights.

(c) In driving his car at a dangerous and unlawful rate of speed, and at a rate of speed greater than a person of ordinary prudence would have under the same or similar circumstances.

(d) In driving his car without keeping, or causing to be kept, a proper lookout for obstructions which might be upon the highway.

(e) In driving his car at such speed that it could not be stopped with the means at hand in time to avoid a collision with any object which might first be discovered when it should come within the reasonable view or range of his headlights.

(f) In failing to so control the speed of his car as that it could be stopped with the means at hand within the length of open highway before him which he knew to be free from and clear of obstruction.

(g) In failing to bring his car under proper control when he knew, or in the exercise of ordinary care should have known, that he was approaching a railroad track which might be obstructed by cars.

(h) Violation of an ordinance of the city of Orange making it unlawful to operate an automobile on and over the streets of said city at a greater speed than 12 miles per hour. To this plea a special exception was sustained.

The case was tried to a jury upon special issues, in answer to which they found: (a) That appellant was not guilty of negligence in leaving and permitting the flat car to occupy that portion of College street which it did occupy at the time of the accident; (b) that appellant was guilty of negligence in failing to have some one stationed at or near the flat car at the time of the collision to warn persons traveling the street of the presence of the flat car on said crossing, and that such negligence was the proximate cause of the injuries sustained by the appellee.

By their answers, the jury acquitted appellee of each and all of the acts of contributory negligence charged against him, and awarded him the sum of $10,000 damages.

Judgment was rendered in accordance with the verdict of the jury. Motion for a new trial was overruled, and the case is before us on appeal.

At the close of the evidence, appellant presented to the court its special charge No. 1 for an instructed verdict in its favor, which was refused. Appellant's first nine assignments of error complain of the refusal of this charge as error. This contention is urged upon the ground (a) that no actionable negligence on the part of appellant proximately resulting in appellee's injuries is shown; and (b) that appellee was guilty of contributory negligence as a matter of law, and that such negligence was the sole cause of his injuries.

These assignments are overruled. The record discloses that the collision occurred at the crossing of College street and the Orange & Northwestern Railroad track in the city of Orange. The street was paved, and the paved portion was some 18 feet wide. There were earthen shoulders on each side of the paved part several feet wide. The railroad track crossed the street at right angles and on a level. The railroad employees had been moving two flat cars loaded with creosoted pilings to the city docks. It was what is known as a "twin load"; that is, the piling was so long it required two flat cars on which to load them. In moving this load of piling, one of the flat cars was derailed over the street crossing. In attempting to pull it back from over the crossing, the drawhead of one of the cars pulled out, and the car could not be moved further. The flat car as thus left covered from about 10 to 14 feet of the paved portion of the street crossing. In other words, there were from 4 to 8 feet of the paved portion of the street crossing left unobstructed, according to the estimate of witnesses. Several testified that they measured it, and it was exactly 4 feet. When the flat car could not be further withdrawn from over the street crossing, the train men left it with a white light lantern set on the drawhead of the car, while an employee went to get a red light to place on the end of the car. While this employee was gone after the red light, appellee came along in his automobile driving toward the city proper, at about 14 miles per hour. That was about 7 o'clock p. m., December 16, and it was dark and cloudy, had been raining, but was not then raining. There was an arc light, hanging very low, some 54 feet from the crossing in front of a store. Appellee was approaching from the side of the store, and drove under this low-hanging arc light going toward the track. He testified that he had not seen

the flat car before he drove under the arc light, and that, when he drove under the light, it blinded him so that he could not see objects just ahead of him, and that he continued going toward the crossing at about the rate of 14 miles per hour, and was not aware of the presence of the flat car until his automobile collided with it. He was driving on his right. The flat car obstructed the crossing on his right, and he would have had to make a sharp turn to the left of the street to have gotten to the unobstructed portion of the crossing, which, as before stated, was variously estimated to be from 4 to 8 feet of the paved part of the street. There was no one at the end of the flat car on the crossing to warn him of the presence of the flat car. The street was one very much used at all hours, and the track was in frequent use by the railroad, but very seldom at night. Appellee was well acquainted with the crossing; had been driving over it for years in going from and returning to his home. He testified that, while he was familiar with the railroad track at the crossing and of its use, he had never before seen it in use at night. During the time the employees of the railroad were endeavoring to remove the flat car from the crossing, many persons in automobiles approached the crossing and were flagged and directed around the stalled car, and several automobiles in trying to pass had gotten partially off of the paved portion and bogged down and had to be pushed out. This all occurred in the presence of the employees of appellant. It had actual notice of the close and careful driving that had to be exercised by those passing to get safely around the flat car, even before dark.

The jury acquitted appellant of negligence in leaving the flat car on the crossing for the night, but found it guilty of negligence in failing to have some one stationed at the flat car on the crossing at the time of the collision to warn persons traveling over said crossing of the presence of said flat car. The question of negligence on the part of appellant, proximately causing appellee's injuries, was one of fact, and the pleadings and the evidence raised this issue, and so it must have been submitted to the jury.

Contributory negligence, as a matter of law, can exist only when the facts are such that reasonable minds can reach but one conclusion. When there is such state of facts that reasonable minds, in considering them, can reach different conclusions, then whether there is such contributory negligence is a question for the jury. We think the facts and circumstances are such that reasonable minds could draw different conclusions as to whether appellee, under all the facts and circumstances, acted as a person of ordinary prudence and caution would have under the same or similar circumstances. The issue was properly submitted to the jury.

Appellant's tenth assignment of error asserts that the court erred in refusing its special charge wherein it was requested that the court charge the jury that, as a matter of law, it was the duty of appellee Harris, knowing that his vision of the street in front of his automobile was obscured by the overhead street light under which he passed, to slow down the speed of his car and control same so that he might avoid a collision with any object in the street over which he was driving, and which object could not be seen by him by reason of the glare of the street light during the time that his vision was blinded by the glare of such light.

This assignment is but another way of saying that appellee was guilty of contributory negligence as a matter of law in not slowing down the speed of his car, or stopping the car before going on toward the flat car on the crossing. We have just held that, under the facts and circumstances, contributory negligence, as a matter of law, did not exist, and, if at all, it must be determined as a fact by the jury. Furthermore, it cannot be said as a matter of law that any one or more things that appellee did or failed to do were prima facie the failure to use such care and caution as a reasonably prudent person would have exercised under like circumstances. Gulf, C. & S. F. Railway Co. v. Shieder, 88 Tex. 163, 30 S. W. 902, 28 L. R. A. 538; Missouri Pac. Railway Co. v. Lee, 70 Tex. 501, 7 S. W. 857, 859. In the case last cited, the defendant railway company asked instructions to the effect that it was the duty of the deceased to make use of his senses of sight and hearing to discover an approaching train, and that, if he was injured by reason of failing to look, when by looking before driving upon the track he could have seen the approaching train, recovery could not be had. In passing upon this question the Supreme Court said: "Our courts have refused to recognize as the duty of the trial judge to attempt to define duties, neglect of which would be negligence, in the absence of statutory definitions of duties, disregard of which is negligence as matter of law. * * * What is due care under a given group of facts must be determined by the jury by applying the rule as to what, in their judgment, a man of ordinary prudence would have done under the attendant circumstances."

Moreover, the requested charge was in the nature of a general charge relating to the consideration by the jury of the special issues to be found by the jury, and hence improper. Freeman v. Railway (Tex. Com. App.) 287 S. W. 902; Cameron Compress Co. v. Jacobs (Tex. Civ. App.) 10 S.W.(2d) 1040, 1043 (writ refused). The assignment is overruled.

The eleventh assignment complains that the court erred in refusing to give appellant's special issue No. 20, which inquired as

to whether or not appellee's injuries were the result of an unavoidable accident. This contention is based upon the argument that it was not shown that appellant knew that the street light would produce a blinding effect upon persons traveling under said light in approaching the crossing, and that, if appellee was not negligent, as a matter of law, the evidence raised an issue of fact as to whether the accident was, under all the facts and circumstances, an unavoidable accident, and should have been submitted to the jury.

We think that the facts and circumstances exclude such issue. An unavoidable accident occurs only when neither party is guilty of negligence—in other words, when negligence in no degree can be attached to the conduct of either party—the absolute absence of any negligence. The jury found appellant negligent in not having some one stationed at the crossing to warn persons approaching the crossing of the presence of the flat car over the crossing. The crossing was much used at all hours by persons traveling along the street. Appellant knew this. It was at night, dark, and the car was dark in color, and covered the major portion of the crossing. During the time the employees of the railroad had been endeavoring to pull the flat car from over the crossing, many persons had approached the crossing and were flagged and directed around the stalled car, and some of the automobiles in trying to pass had gotten partially off the paved portion and bogged down and had to be pushed out. This all occurred in the presence of the employees of appellant. It had actual notice of the close and careful driving that had to be exercised by those passing to get safely around the car even before dark. The flagging was done by some outsiders who were at the scene of the accident. This must have been known to appellant's employees. When the drawhead of the car pulled out and further attempts to move the car were abandoned after dark, a small lantern with white light was placed by appellant on the drawhead of the car and an employee sent to get a red light to put on the end of the car. While this employee was gone after the red light, appellee came along and ran into the flat car. We think that this unusual state of affairs, not to be anticipated by travelers, but known to appellant, called for some one to be stationed at the crossing to warn travelers of the danger of the stalled car. The nature of the crossing, as it usually existed, was not such as to require the constant stationing of a flagman at it to warn persons of danger, but the necessity for such flagman was created by the unusual happening of the stalled car upon and over the crossing, at such hour on a dark night, and the constant use of the street at all hours which must have been known, or at least should have been anticipated, by appellant. The jury's finding of negligence was amply supported by the evidence. If the accident complained of could have been prevented by either party, by the use of means suggested by common prudence, it was not unavoidable. Dallas Ry. & Terminal Co. v. Darden (Tex. Com. App.) 38 S.W.(2d) 777.

■ The twelfth and thirteenth assignments of error challenge the correctness of the court's definition of "proximate cause." The court defined proximate cause as follows: "You are instructed that the term 'proximate cause', as that term is used in the charge, means a moving and efficient cause, without which the injury in question would not have happened; an act or omission becomes as proximate cause of an injury whenever such injury is the natural and probable consequence of the act or omission in question and one that ought to have been foreseen by a person of ordinary care and prudence in the light of attending circumstances. It need not be the sole cause, but it must be a concurring cause which contributed to the production of the result in question and but for which the said result would not have occurred."

Appellant objected to this charge on the grounds:

"(a) Said charge apparently refers to certain happenings, matters or things which might have reasonably been anticipated as a natural and probable consequence of some other condition, fact or happening, which is not stated nor referred to in said definition, and without the statement of which said charge is vague, indefinite, uncertain and unintelligible."

"(b) Because the definition of 'proximate cause' contained in the charge * * * incorrectly defines 'proximate cause' in failing to state that in order for a cause of an injury, such cause must, in a natural and continuous sequence, unbroken by any new cause, produce an event, and must be such a cause as the event would not have occurred without the existence of the cause defined as a 'proximate cause.' "

We overrule these assignments. The definition contained all the necessary elements of the term defined. This exact charge was given in West Texas Coaches, Inc., v. Madi (Tex. Civ. App.) 15 S.W.(2d) 170, and approved by the appellate court. See, also, Texas & P. Railway Co. v. Bufkin (Tex. Civ. App.) 46 S.W.(2d) 714 (writ dismissed); Texas-Louisiana Power Co. v. Bihl (Tex. Civ. App.) 43 S.W.(2d) 294.

■ The fourteenth and fifteenth assignments complain that the court's definition of "contributory negligence" was insufficient and misleading. The charge reads: "Contributory negligence is such an act or omission on the part of the plaintiff, or one claiming to be injured, as amounting to a want of ordinary and proper care and prudence as

concurring or cooperating with some negligent act or omission, if any, of defendant, is the proximate cause of the injury."

The assignments are overruled. The definition was neither misleading nor insufficient. Koons v. Rook (Tex. Com. App.) 295 S. W. 592, 595; see volume 13, Encyclopedic Digest, Texas Reports, Michie (F), p. 177; Id. vol. 21, (F) p. 759. As we understand appellant's objection to the court's definition of contributory negligence, it is that it contained the term "contributing cause," and that this term itself had a well-defined meaning in law, and, when used in connection with the term "contributory negligence," should also have been defined. It will be noticed that there is no such expression in the court's charge.

Assignments 16 to 19, inclusive, assert that the court erred in submitting special issue No. 3 to the jury as to whether or not appellant was negligent in not placing some one at the derailed flat car on the crossing to warn persons approaching the crossing of the presence of the flat car, for the reason, appellant says, that there was no evidence raising such issue, and that the finding of the jury in answer to said issue is not supported by the evidence. These assignments are overruled. What we have said in discussing appellant's eleventh assignment as to "unavoidable accident" disposes of the assignments here urged, but we will again refer to the situation. We again say that the nature of the crossing, as it usually existed, was not such as to require the constant stationing of a flagman at the crossing to warn persons approaching said crossing of possible danger, but that the unusual happening, and circumstances attending it, all known to appellant and not known to the public, proper care and foresight upon the part of appellant in discharge of its duty to the public called for the placing of a flagman at the crossing until the obstruction was removed. The crossing in question was one much used at all hours by the public, the derailment occurred late in the evening, and appellant's employees endeavored to remove the car from the crossing until dark, and, because the drawhead of the car pulled out, had to abandon it for the night, leaving it obstructing the major portion of the crossing— the unobstructed portion being from 4 to 8 feet of the paved portion of the crossing, according to varying estimates of the witnesses. The night was dark, it had been raining, but was not at the time of the collision, about 7 o'clock p. m. December 16th. During the time efforts were being made to remove the flat car, persons approaching the crossing were flagged and directed around the protruding cars, and it required careful driving by those passing in order to get safely around the obstruction in the daytime, and at least one or more of the cars got partially off of the paved part of the crossing and bogged down and had to be pushed out. All these facts were known

to appellant's employees in charge of said freight car. When efforts ceased to remove the flat car, a small trainman's lantern with white light was placed on the drawhead of the car, and another employee went to get a red light to put on the end of the car on the crossing. While he was gone after the red light, the accident occurred. This unusual state of affairs existing at this much-traveled crossing, not to be anticipated by travelers, but known to appellant, called for the placing of a flagman at the crossing to warn travelers of the danger of the stalled flat car. The evidence not only raised the issue, but amply supports the jury's finding on same.

The thirtieth and thirty-first assignments urge that the jury's answer to special issue No. 4, finding that the negligence of appellant in failing to place a flagman at the crossing to warn persons approaching said crossing of the presence of the flat car was the proximate cause of appellee's injuries, has no support in the evidence, and is against the great weight and vast preponderance of the evidence. What we have said above in discussing the jury's answer to special issue No. 3 and the assignment relative to contributory negligence on the part of appellee disposes of these assignments. They are overruled.

Assignments 20, 21, 22, 23, 32, 33, 34, and 35 assert that the jury's answers to special issues Nos. 5, 7, 9, and 11 (relating to contributory negligence on the part of appellee, and which were all answered "No," thereby acquitting appellee of any contributory negligence) were without support in the evidence. These assignments are overruled. We have already discussed and overruled appellant's contention that appellee was guilty of contributory negligence as a matter of law. The issues bearing on contributory negligence were raised by the pleading and the evidence, were properly submitted, and the findings of the jury are amply supported by the evidence.

The thirty-ninth assignment urges that the court erred in overruling appellant's motion for a judgment on the answers of the jury to the special issues submitted. The insistence is upon the grounds (a) that the jury found appellant was not negligent in leaving the flat car on that portion of the street obstructed by it; and (b) that the jury's finding that appellant was guilty of negligence in not placing some one at the flat car to warn persons approaching the crossing of the presence of the flat car on the crossing, and that such negligence was the proximate cause of appellee's injuries, were findings on immaterial issues, and that such findings were not such as would support a judgment. The facts have been rather fully set out and discussed. The findings mentioned are not upon immaterial issues, but upon final and determining issues necessary to a judgment. The assignments are overruled.

The assignments asserting error in the court's charge relative to the elements the jury might consider in arriving at the damage, if any, that should be awarded appellee, are overruled. We think the charge free from the criticisms of appellant, and that said charge was clear, concise, and a correct application of the law.

The fortieth assignment of error challenges the amount of damages awarded by the jury as excessive, so much so as to indicate that the jury was controlled by bias, passion, prejudice, or some other improper motive. The verdict is for $10,000. The jury heard the testimony of the witnesses, describing appellee's physical condition, his labor and earnings before and at the time of his injuries. They also saw the appellee when testifying, heard the evidence as to his suffering and loss of ability to work and earn wages or income after his injuries. He was twenty-three years old at the time of the trial, and there was much testimony as to his practically total, if not total, inability to work and earn money after the injuries, continuing up to the time of the trial, and in the future. They saw the witnesses and heard them testify, and they were the judges of the weight and credibility to be accorded to their testimony. We are not able to find evidence of bias or passion on their part. Under their oaths they said $10,000 would reasonably compensate this young man for his injuries, and we do not feel justified in saying the award should, for any reason, be disturbed.

The assignment saying the judgment should be overruled because the court refused a new trial is overruled.

No reversible error being shown, the judgment should be affirmed, and it is so ordered.

Affirmed.

COMBS, J., dissenting on rehearing, see 59 S.W.(2d) 217.