ALMA RICHARD, PRO AMI, *vs*. MAINE CENTRAL RAILROAD CO.

HENRY RICHARD *vs*. MAINE CENTRAL RAILROAD CO.

ADELARD C. SYLVESTER *vs*. MAINE CENTRAL RAILROAD CO.

MARION SYLVESTER, PRO AMI, *vs*. MAINE CENTRAL RAILROAD CO.

Cumberland. Opinion, November 3, 1933.

*Ellis L. Aldrich,* for plaintiffs.
*Perkins & Weeks,* for defendant.

SITTING : PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

THAXTER, J. These cases arise out of a collision between an automobile, in which two of the plaintiffs were passengers, and a freight train standing on a highway crossing. In two of the cases the plaintiffs who are minors bring suit for personal injuries, in the other two their respective fathers seek to recover for medical expenses. At the conclusion of the plaintiff's evidence the presiding Justice directed a nonsuit, and the cases are before us on exceptions to this ruling.

On December 28th, 1932, about eight o'clock in the evening the two plaintiffs, Alma Richard and Marion Sylvester, were riding in an automobile with one Robert Morse on the Growstown Road so called in Brunswick. He was driving. Miss Richard sat next to him and Miss Sylvester beside her, all on the front seat. The night was foggy. Dr. Foss, who arrived soon after the accident, testified that it was one of the thickest nights that he ever knew. Across the highway on which the plaintiffs were proceeding was a railroad crossing of the defendant. This was not protected by gates or automatic signals of any kind, and there were no important street lights in its vicinity. There were the usual signs without illumination warning travellers of the presence of the railroad. As the automobile approached this crossing the driver reduced his speed and proceeded very slowly. The windshield in front of the passengers was covered with mist. The wiper in front of the driver was operating, but in order to see better he had lowered the window on his side of the car and was leaning out as he approached the track. A freight train had been stopped on this crossing for fifteen minutes.

There was no sound and there were no trainmen there. No one of the occupants of the automobile saw or heard anything to indicate that the road was blocked, until a collision took place with a box car of the train which was across the highway.

The facts of this case raise an issue not heretofore directly before the Court in this state. The plaintiffs had the burden of establishing first their own due care, and secondly the negligence of the defendant. The duty of passengers in automobiles has been many times discussed by this Court. In this instance the vision of the girls was obscured. They were, however, proceeding at a very moderate rate of speed, and they knew that the driver was peering out beyond the side of the car in an attempt to better discern objects ahead of him. Though passing through a fog which obscured vision, it was not as a matter of law their duty to get out and walk. The question is whether they failed to take reasonable precautions under the conditions. *Cole* v. *Wilson*, 127 Me., 316, 143 A., 178. This was for the jury.

The real issue stressed in this case is as to the defendant's negligence. The rights of a railroad and the travelling public to the use of a highway at a grade crossing are reciprocal. *Continental Improvement Co.* v. *Stead,* 95 U. S., 161, 24 L. Ed., 403. The only superior right of the railroad is the right of passage. *Mitchell* v. *Bangor & Aroostook Railroad Co.*, 123 Me., 176, 122 A., 415. As an incident to this it may well be that the railroad may stop its trains across a highway and temporarily block it; but under such conditions the use which it makes of the way must be such as is reasonably necessary to enable it to perform its duties as a common carrier. The statutes of our state recognize this principle when they provide that "no way shall be unreasonably and negligently obstructed by engines, tenders, or cars." Rev. Stat. 1930, Ch. 64, Sec. 79. The railroad itself acceded to it when it adopted Rule 103D which reads as follows: "No train or engine will obstruct any highway for a longer period than five consecutive minutes. Conductors will be particular to uncouple their trains and clear the crossings if they find it necessary to remain longer."

It is indisputable that leaving an unlighted obstruction in a highway at night creates a hazard for travellers. It makes but

little difference whether this be an excavation, *Kendall* v. *City of Des Moines,* 183 Ia., 866, 167 N. W., 684, an automobile, *Rice* v. *Foley,* 98 Conn., 372, 119 A., 353, a railroad crossing gate, *Record* v. *Pennsylvania Railroad Co.,* 76 N. J. L., 800, 72 A., 62, or a freight car, *Mann* v. *Central of Georgia Railway Co.,* 43 Ga. App., 708, 160 S. E., 131. Whether such obstruction may be the proximate cause of an injury depends on the circumstances of each individual case, and particularly on whether or not the traveller in the exercise of due care should have seen it and have avoided a collision with it. The rule governing the liability of a railroad for negligence in leaving a train across a highway is well stated in *Trask* v. *Boston & Maine Railroad,* 219 Mass., 410, 414, 106 N. E., 1022, 1024, in the following language: "In order to charge the defendant with negligence it must be found that its employees, in the exercise of reasonable care, would have known that on account of the darkness the cars upon the crossing were such an obstruction that people travelling along the highway, in an automobile, at a reasonable rate of speed, properly equipped with lights and carefully operated, would be liable to come in collision with them." This doctrine is expressed in substantially similar language in the following cases. *Gage* v. *Boston & Maine Railroad,* 77 N. H., 289, 90 A., 855; *Gulf, M. & N. R. Co.* v. *Kennard,* (Miss. 1933), 145 So., 110; *St. Louis & San Francisco Ry. Co.* v. *Guthrie,* 216 Ala., 613, 114 So., 215. There seems to be no real conflict as to the rule but difficulties arise in the application of it to a particular case. The facts in many cases cited by counsel for the defendant are distinguishable from those before us.

In the very case which lays down the above rule it is pointed out that the driver of the automobile could have seen a distance of one hundred feet ahead and could have stopped his car within forty feet. The cause of the accident was therefore the negligence of the driver of the car and not of the railroad. In the same general category fall the following cases. *Gage* v. *Boston & Maine Railroad,* supra; *Gulf M. & N. R. Co.* v. *Kennard,* supra; *Crosby* v. *Great Northern Ry. Co.* (Minn. 1932), 245 N. W., 31; *St. Louis & San Francisco Ry. Co.* v. *Guthrie,* supra; *Gallagher* v. *Montpelier & Wells River Railroad,* 100 Vt., 299, 137 A., 207; *Philadelphia &*

*Reading Railroad Co.* v. *Dillon*, 31 Del., 247, 44 A., 62; *Scott* v. *Delaware, L. & W. R. Co.*, 226 N. Y. S., 287; *Witherly* v. *Bangor & Aroostook Railroad Co.*, 131 Me., 4, 158 A., 362.

Still other cases are distinguishable because the evidence discloses that at the time of the collision the trainmen had had no opportunity to warn the approaching automobile. *Yardley* v. *Rutland Railroad Co.*, 103 Vt., 182, 153 A., 195.

In those cases where the facts are analogous to those before us the Courts have held that the issue of the defendant's negligence was for the jury. *Mann* v. *Central of Georgia Railway Co.*, supra; *Bober* v. *Southern Railway Co.*, 151 S. C., 459, 149 S. E., 257; *Prescott* v. *Hines*, 114 S. C., 262, 103 S. E., 543.

In *Witherly* v. *Bangor & Aroostook Railroad Co.*, supra, this Court laid down the rule, page 7, that "Negligent obstruction of a highway by a standing train is determined by whether, under all the circumstances, it is reasonable or otherwise." Whether in the case before us the occupation of the railroad crossing without a warning to travellers was reasonable depended on a number of factors, the length of time that the train remained standing and the opportunity thus given the trainmen to display warning signals or to uncouple the train, the visibility, atmospheric conditions, the purpose for which the train stopped, and doubtless others.

On the plaintiffs' evidence taken most favorably for themselves the question of the reasonableness of the defendant's conduct, and whether its negligence, if found, was the proximate cause of the accident were for the jury.

*Exceptions sustained.*