## 26827. SOUTHERN RAILWAY COMPANY *v.* LOWRY.

DECIDED DECEMBER 5, 1938.

*C. C. Bunn, Maddox, Matthews & Owens, W. H. Trawick,* for plaintiff in error.

*Mundy & Mundy,* contra.

MACINTYRE, J. Lowry filed suit against Southern Railway Company for damages on account of alleged personal injuries and damage to his automobile, occasioned by the collision of his automobile with the side of a freight-car. The defendants filed de-

murrers, both general and special, and, after the petition was amended, they were overruled. The case proceeded to a jury who found a verdict for the plaintiff. The defendant moved for a new trial which was overruled and he excepted.

The petition alleged: "About midnight the petitioner approached the tracks of the defendant company running in an easterly and westerly direction. He brought his automobile which he was then driving to a stop as required by law, and then approached said crossing for the purpose of going to Rockmart when his automobile went under and into one of the freight-cars of defendant, then blocking said crossing, causing the personal injuries to petitioner and the damages to his car sued for. That on the night of the collision petitioner was in the exercise of ordinary care in approaching the railroad crossing and in using the same to travel southerly toward Rockmart, and with the exercise of such ordinary care did not and could not discover that said crossing was blocked by the freight-train of the defendant. In using that part of the street and highway which was blocked by the train of the defendant, petitioner could not and did not see the train, as it was night and the particular car that was across the street and highway where petitioner was traveling, was a highly constructed car, and the lights of his automobile, which were burning in the usual way, went beneath the frame or box part of the car, so that he did not and could not, by the exercise of ordinary care, discover that part of the train that did block said street and highway."

The petition also alleged: "The defendant was negligent and was not in the exercise of ordinary care, under the circumstances, in placing its box-car and train of freight-cars across said street and highway for more than five minutes without having some one in charge of said train so as to give notice and warning to the traveling public using said street and highway that the crossing was blocked, and such notice and warning should have been given by the defendant on this occasion by the party in charge by some light, noise, or other warning, which would attract the attention of the users of said highway that the crossing was blocked, instead of leaving the train unattended and standing silently upon the crossing, without any light or other warning that the crossing was blocked. . . That it had rained some that night. It was rather a dark night and it was foggy at the time he received the injuries

complained of, and where said box-car and train was located across the said street and highway, and in approaching the box-car, which was built rather high from the wheels, and consequently from that part of the street covered by the car, so that petitioner could not see the box-car and train, and did not see it at the time his car ran into the same, although he was looking in that direction, and was operating his car cautiously, carefully, and at a rate of speed of about fifteen miles per hour, not exceeding twenty miles per hour. He had stopped his car on approaching said crossing, as provided by law, and after seeing no light and hearing no noise, seeing no locomotive and receiving no warning or notice whatever that the crossing was blocked, and being unable to see the box-car across the street and highway, he proceeded cautiously to use the highway in the ordinary manner, and he suddenly approached the car, and being so close to it at the time he could not stop his automobile, and then the crash, from which he received the injuries complained of in the original petition. . . That the railroad at the point of crossing said street and highway is some four feet higher than the street on the north side from which petitioner approached the said railroad crossing, and at the point where he stopped his automobile before approaching the crossing he was some four feet lower than the track on which the freight-train of the defendant was parked, and having stopped his car it was necessary for him to go in low gear to start his car and make the grade immediately in front of him and leading over the railroad track where the crossing was blocked. Not being able to see the box-car and train, and having no warning of any kind that the crossing was blocked, and believing that the same was clear, as it [occurred] appeared to him under the circumstances to change from first to second gear, and then to high gear just before and about the time of the contact with the box-car. That the defendant was negligent and was not in the exercise of ordinary care in leaving said crossing blocked with its freight-train at that particular place, because the street and highway is much used by the public, is located immediately between Goodyear Village and the Rockmart High School, and directly between Goodyear Village—of some 2000 citizens— and Rockmart, and is such a location and the surroundings are such that ordinary prudence and care would require the defendant not to remove its engine from the train, and leave an unlighted

freight-train unattended and silently blocking the crossing, without any light or any warning to the public and the users of said street and highway. While petitioner is acquainted with the street and highway at this place, he did not anticipate or expect a freight-train to be left across the street and highway so as to block it, without some one being in charge of the train at the crossing to give warning to the users of the highway of the fact that the crossing was blocked. The street immediately north of the railroad crossing being about four or four and a half feet lower than the railroad track, there is a sharp rise or ascent in the street as it approaches the railroad crossing, and as the crossing is approached the lights of the car naturally are thrown upward, and as the crossing was approached the lights would be lowered, and although the lights were in good condition, the night was foggy and the atmospherical conditions were such that he could not and did not see the box-car before the contact and resulting injuries."

The petition averred that the defendant was negligent in the following, among other particulars: "1. In placing its unattended freight-cars across said public street, in violation of the city ordinance at Rockmart. 2. In permitting the box-car to remain across said public street, in violation of the city ordinance at Rockmart. 3. In parking and leaving across said public highway and street on a dark, foggy night, an unlighted freight-train without attendance. 4. In leaving unlighted and unattended a freight-car and a line of freight-cars parked across said highway, and in leaving and having no member of the crew of the train to remain with and guard said crossing, and give warning to the users of said highway and street, so as to prevent injury to travelers along said public highway. 5. The location of said crossing, its height above the street approaching it from the north, its location in Goodyear Village, and in the City of Rockmart, and at a place where the street and highway is much used, and where the public generally and constantly use said highway, requires the defendant, in the exercise of ordinary care and safety, to place some person or some light or other warning at said crossing while the same is being blocked and used by the defendant where its engine is not attached to the freight-train, or is so far away that it does not give any warning by sound or otherwise of the fact that the crossing is blocked with its train. The fact that the night was dark and also

foggy so that vision was not good, required the defendant, in the exercise of ordinary care, to have some one at said crossing with a light or other means of warning to the public using the highway and approaching said blocked crossing. Not only the city ordinances, but the exercise of ordinary care, the duty of the defendant to the public when blocking said crossing, is required to have some one at the crossing to give notice with a light or noise or something that would attract the attention of the traveling public to the fact that the highway crossing is blocked by one of its cars or trains."

This case is controlled by *Mann* v. *Central of Georgia Ry. Co.*, 43 *Ga. App.* 708 (160 S. E. 131). See also *Central of Georgia Ry. Co.* v. *Heard,* 36 *Ga. App.* 332 (136 S. E. 533); *Shelly* v. *Pollard,* 55 *Ga. App.* 88 (189 S. E. 570); *Gay* v. *Smith,* 51 *Ga. App.* 615 (181 S. E. 129); and is distinguishable from *Burnett* v. *Louisville & Nashville R. Co.,* 58 *Ga. App.* 64 (197 S. E. 663); *Brinson* v. *Davis,* 32 *Ga. App.* 37 (122 S. E. 643); *Central of Georgia Ry. Co.* v. *Adams,* 39 *Ga. App.* 577 (147 S. E. 802); *Tidwell* v. *Atlanta, Birmingham & Coast Ry. Co.,* 42 *Ga. App.* 744 (157 S. E. 535). It will be noted that there are allegations in the instant case as to the manner in which the plaintiff was affected by fog and other weather conditions. From the facts alleged in the petition we can not say that the defendant was not negligent in at least one or some of the particulars alleged, or that the plaintiff, if negligent, was so negligent as to be barred from a recovery, or that it affirmatively appeared that the injury was attributable to negligence on the part of the plaintiff as the proximate cause. The court did not err in overruling the general demurrer.

The plaintiff having alleged that he "stopped his car on approaching said crossing, as provided by law, and after seeing no light and hearing no noise, seeing no locomotive and receiving no warning or notice whatever that the crossing was blocked, and being unable to see the box-car across the street and highway, he proceeded cautiously to use the highway in the ordinary manner, and he suddenly approached the car, and being so close to it at the time he could not stop his automobile, and then the crash from which he received the injuries complained of;" and then having further alleged that he approached the blocked road track on a grade, and that immediately in front of this grade he stopped on

the street at a point four feet lower than the track on which the freight-train of the defendant was parked,—these allegations we think were sufficient to afford the defendant an opportunity to dispute the plaintiff's allegations that he was so close to the car that when he discovered it, even though exercising ordinary care, he could not stop. The judge did not err in overruling the special demurrer raising this point. Other grounds of the special demurrer are not meritorious.

We do not think it necessary to discuss at length the negligence of the defendant, for the evidence authorized a verdict unless the plaintiff failed to exercise ordinary care to avoid his injury. On the question whether the plaintiff's injury was due to his own carelessness, he testified in part: "I knew the crossing was there and I knew I was coming to it at the time of the accident about midnight. I had never gone over the crossing before along about midnight. I stopped thirty feet from the crossing. The train was on the center track. There was one track between me and the train when I came up to where my lights hit the train. I was about eight feet from the train, the distance of the first track, the space between it and the second track. I was running twelve or fifteen miles per hour. The night was dark, foggy, and cloudy. It was a hard night to see. My lights would throw about thirty feet on a dark, clear night. The train was between me and an electric light. I don't know whether it was burning or not. My lights were adjusted to show straight ahead. I saw the train two seconds before I hit it, about six feet before I hit it. When I hit it I was running twelve to fifteen miles per hour. I could have stopped in running at twelve to fifteen miles per hour in about twelve feet. I could not see as much as fifty feet at that particular point. It was foggy. I could see about twenty feet ahead. If I had been looking at the moment I could not have seen that car twenty feet ahead of me. My lights were shining under it. I mean the way the car approached the track, the light doesn't shine as high as this particular box-car bottom was. I stopped my car, came to a dead stop. I stopped to look for a train and to see if the crossing was clear. I could not see the train. It was foggy. As you approached the railroad track from the direction in which I was traveling, the street gradually ascends until you reach the track, but I don't know what distance it is. There is an incline.

I don't know just how many feet it is, and when you come up on the level there are three tracks up there. The main line is the center track. My lights were adjusted to show straight ahead, so that coming up on the incline my lights would be pointing straight ahead of the car, but the lights would follow the elevation of the ground, so, as you approached up that elevation, those lights would not be thrown right on a freight-car across that street. They would go under it because it didn't shine high enough. I was in about four or six feet of the train when the top of my lights hit the bottom of the box-car."

"Questions as to diligence and negligence, including contributory negligence [proximate cause], being peculiarly for the jury," we can not say that the jury were not authorized to find a verdict for the plaintiff.

The rules of law announced in headnotes 3, 4, and 5 need no elaboration.

*Judgment affirmed. Guerry, J., concurs. Broyles, C. J., dissents.*