BOYD v. ILLINOIS CENTRAL R. R. Co.

In Banc. Apr. 9, 1951.

No. 37888 (52 So. (2d) 21)

Pershing B. Sullivan and Melvin & Melvin, for appellant.

**Deavours & Hilbun,** for appellee.

**Hall, J.**

Appellant brought suit against appellee for the recovery of damages to his automobile as well as for personal injuries sustained by him when he struck a flatcar which was standing upon a public crossing in the unincorporated village of Soso. At the conclusion of appellant's evidence the trial court sustained appellee's motion to exclude the same and directed a verdict in appellee's favor, and this appeal is from a judgment entered thereon.

In considering the propriety of the peremptory charge we must view the record in the light of the most favorable conclusions in appellant's behalf which the jury could have reasonably drawn therefrom and must treat as proven all material facts which the evidence estab-

lished either directly or by reasonable reference. Bird-song v. City of Clarksdale, 191 Miss. 532, 3 So. (2d) 827, and numerous authorities cited in 2 West's Mississippi Digest, Appeal and Error, 927(7).

Appellant's evidence shows the following facts: Appellee is a common carrier and owns a line of railroad which extends from Laurel to Saratoga; at Soso it maintains a station, the depot being situated about 75 or 100 feet west of a public grade crossing where Mississippi Highway No. 20 passes over the track; at this point the railroad runs approximately east and west and the highway runs approximately north and south; between 20 and 30 feet north of the main line track, and practically parallel therewith, the appellee also maintains a side track, which is likewise crossed by the highway; these two tracks are on a level with each other; approaching from the north the highway runs downhill until the spur track is reached, then it levels off until it passes over both tracks, and then the highway runs uphill; appellee did not provide any stop sign on the north side of its tracks to warn travelers upon the highway as required by Section 7775, Code of 1942, nor did it provide any other kind of notice or warning of the presence of the track; the highway was hard surfaced and was 18 feet in width; approximately 80 feet or more north of the crossing the highway made a slight dip; on the night in question appellee stopped a train upon this crossing in such manner that an empty flatcar, used for transporting pulpwood, was left thereon; the center of this car was approximately upon the center of the crossing; the car was between 36 and 40 feet in length; the wheels under the west end were entirely on the west side of the crossing, and the wheels under the east end were entirely on the east side of the crossing, so that underneath this car that part of the railroad track upon the highway was not obscured in any manner, and from one side of the highway to the other the only obstruction was the floor of the car and the side of a sill about 15 or 18 inches in height upon

which the flooring rested and iron rods about one inch in diameter which braced and supported the sill; there had been some rain that day but the pavement had dried and the night was dark and cloudy; there are several business houses in Soso, most of them being along the highway north of the railroad; they had all closed for the night and there was no light burning in either of them nor was there any street light, the whole village being completely dark.

Appellant testified that he had been passing over this crossing for about 20 years; that he had crossed it as much as three or four times in some weeks but that sometimes he did not cross it for as much as three or four weeks, and he estimated that he had been over it an average of once a week for about 20 years, but that most of his traveling was in the daytime and that he had not crossed there very much at night; that in a general way he was familiar with the business houses in the village of Soso and knew that the highway crossed the railroad; that on the night in question he was traveling about 45 miles an hour until he reached Soso and then slowed down to about 30 miles an hour; that he was driving a Pontiac car which was then about one year old; that it had good lights and brakes and that as the highway straightened out his lights illuminated the hill beyond the track and as he started down the hill traveling to the south he was looking for the railroad stop sign so that he might know when he was near the track and after he passed the little dip in the highway the beam of his lights lowered and as he reached the side track where the highway leveled off he discovered the flatcar upon the main line track when he was within about 20 feet of it, and he immediately applied his brakes but was unable to stop before striking it.

Appellee, in support of the action of the trial court, relies upon Gulf, Mobile & Northern Railroad Co. v. Holifield, 152 Miss. 674, 120 So. 750; Gulf, Mobile & Northern Railroad Co. v. Kennard, 164 Miss. 380, 145 So. 110; Spil-

man v. Gulf & Ship Island Railroad Co., 173 Miss. 725, 163 So. 445; Mississippi Export Railroad Co. v. Summers, 194 Miss. 179, 11 So. (2d) 429, 905, and Summerford v. Illinois Central Railroad Co., Miss., 196 So. 264. In the Holifield case, supra, it was held that ██ █ a railroad company has the right to' occupy a public crossing for its legitimate business purposes, and while so doing it is not required to maintain lights on its cars, or to station a man with a lantern at the crossing to give warning that it was obstructed by the cars, unless the conditions and circumstances are such that the employees know, or in the exercise of reasonable care and caution should know, that a person driving upon the highway at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, could not see or might not be able to see the cars in time to avoid a collision therewith. The other cases cited above follow substantially the same rule.

Appellant, however, relies upon the recognized exception to the stated rule and insists that the conditions and circumstances here in evidence bring this case within the exception and relics upon Magers v. Okolona, Houston & Calhoun City Railroad Co., 174 Miss. 860, 165 So. 416; Illinois Central Railroad Co. v. McNeil, 205 Miss. 807, 39 So. (2d) 490; and the Alabama case of Callaway v. Adams, 252 Ala. 136, 40 So. (2d) 73.

In one or two of the cases cited by appellant it was stated that the presence of the car upon the crossing is all the notice which a traveler needs, but it must be at once apparent that such an expression has no application where the conditions and circumstances are such that reasonable care requires some further warning. If it were true that the mere obstruction of a crossing is sufficient notice that it is obstructed in each and every case, then there would never be any need for the exception and the exception would be a mere waste of words which are meaningless and of no avail in any case. In the Magers and McNeil cases, supra, this Court held in

effect that the mere presence of an obstruction of a public crossing by the railroad was not sufficient notice of such obstruction where the conditions and circumstances were such that the jury would be warranted in finding that reasonable care required additional warning.

The Holifield case cites for its principal support St. Louis-San Francisco Railway Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110. In that case the Supreme Court of Alabama clearly recognized the exception to the general rule, and in the more recent case of Callaway, Trustee for Central of Georgia R. Co., v. Adams, 252 Ala. 136, 40 So. (2d) 73, 75, that Court applied the exception; we quote from the opinion in the latter case:

"Alabama Highway No. 6 makes a grade crossing with the tracks of the Central of Georgia Railway Company within the city limits of Union Springs. On November 17, 1947, about 7:30 p. m., in switching cars, the defendant had left a freight train standing across and blocking this highway, where it remained unlighted, without guard or flagman, for a period of several minutes. The appellee, Adams, was traveling this highway westwardly in his K-7 International Tractor and 28-foot refrigerator trailer. His tractor was equipped with proper headlights and both vehicles with standard brakes in good mechanical condition. He did not know the crossing was there and did not observe the train until just before reaching it, when he was unable to come to a complete stop and his vehicle collided with one of the cars and was demolished. . . .

"The following facts are fully sustained by plaintiff's evidence: By reason of the downgrade of the highway leading west toward the crossing, lights on motor vehicles traveling in that direction are focused only on the roadway until in immediate vicinity of the crossing, at which point the highway makes an abrupt upgrade and the lights then become focused on a view of the crossing. This was the situation with which the plaintiff was confronted immediately as he approached the crossing. The

lights of his vehicle were in good order and would reveal an object at considerable distance under normal conditions, but by reason of this topography the presence of the train on the track was not revealed and could not be discovered until within 20 or 30 feet therefrom, and traveling then at a rate of about 20 or 25 miles an hour, he was unable to stop and avoid the collision, since it required about 120 feet distance to bring his vehicle to a halt. The plaintiff was a stranger and not familiar with the locus in quo and had no knowledge or notice of the presence of the car obstructing the highway until too late to stop. The railroad company did maintain on the east side of its track at the crossing a signal light, but due to the view being obstructed by overhanging branches of pecan trees growing on property adjacent to the defendant's right of way, these signal lights could not be observed by travelers going in that direction until just before reaching the crossing. According to plaintiff's witnesses, no other warning was given of the presence of the train, nor did the personnel in charge thereof undertake to ascertain the condition of the crossing as regards hazard to the traveling public when the train was left standing there.

"As stated, these facts were fully sustained by the evidence offered for the plaintiff, including the testimony of two ministers of the gospel, who were traveling immediately ahead of the plaintiff as plaintiff attempted to pass them, and who witnessed the collision, and were just able to bring their vehicles to a stop before reaching the crossing; and a member of the Alabama Highway Patrol, who investigated the accident immediately thereafter and observed the condition of the highway, the signal light at the crossing, and its obscurity from view by the pecan grove.

"The principal insistence for error is the action of the trial court in refusing to give the general affirmative charge for the defendant as regards its own negligence and as to the contributory negligence of the plaintiff.

We do not think the authorities sustain such a position. A careful study of the record in the light of the governing authorities convinces us that the question of negligence of the defendant in so obstructing the highway was a disputed issue of fact, which required the refusal of the affirmative charge. It was open to the jury to conclude against the defendant on the theory that the plaintiff was not sufficiently warned of the presence of the train to avert the accident by one such as he, who was unacquainted with the crossing, did not see the train, and by exercising reasonable diligence could not have discovered its presence in time to avert the accident. . . .''

The Court then discussed the Guthrie case and other Alabama authorities and said further: ''Here the circumstances bring the case within the exception. The facts adduced afford a proper inference that by reason of the topography and the grade and course of the highway and the overhanging tree limbs obstructing the signal light from view, the presence of the train could not, by the exercise of reasonable care, be discovered until immediately upon it, thus disclosing an environment producing such special circumstances or conditions of hazard as made it a jury question as to whether or not it was incumbent upon the employees of the railroad company to give the plaintiff—a stranger to the situation—some additional warning of the presence of the train.''

It is true that in the quoted case the plaintiff was wholly unfamiliar with the crossing ██ while in the case at bar the plaintiff had been over the crossing at night, but it remains undisputed in the present state of the record before us that he did not know the exact location of the crossing and was looking for the required stop sign to apprise him when he came in proximity to the crossing. It is also true in the Callaway case that the railroad had installed a red light at the crossing which was burning at the time and its warning was obscured by the overhanging branches of pecan trees; there the railroad company had actually installed an automatic signal light,

but here the company had not even complied with the mandatory requirement of our statute with reference to the erection of a stop sign to warn travelers, and the above decision supports our view that the plaintiff's evidence, uncontradicted and unexplained, presented sufficient facts to justify submission of the case to the jury upon the issue whether reasonable care on the part of the railroad required some kind of warning other than the mere presence of the flatcar upon the crossing, especially when plaintiff's evidence was excluded without the offering of any evidence by the company.

In the case of Harper v. Northwestern Pacific Railroad Co., 34 Cal. App. (2d) 451, 93 P. (2d) 821, 824, the court said: " 'It is true that a visible railroad track is itself a warning of danger. But it is equally true that a railroad track which is invisible on account of darkness or because it is otherwise concealed from view, is not a warning of danger, unless one knows just where to look for it.' . . . It is here claimed that crossing signals are intended only to protect travelers against approaching trains and not against trains that have already reached the crossing, upon the theory that then the train itself is sufficient warning; but here where the presence of the spur itself was unknown to the driver of the car, a white cross-arm might have been seen where a dark boxcar would not."

The last mentioned case was cited and quoted with approval by the Circuit Court of Appeals for the Ninth Circuit in Southern Pacific Co. v. Haight, 126 F. (2d) 900, certiorari denied 317 U. S. 676, 63 S. Ct. 154, 87 L. Ed. 542.

In John F. Ivory Storage Co. v. Atlantic Coast Line R. Co., 187 Va. 857, 48 S. E. (2d) 242, 247, which on the facts is similar in many respects to the case at bar, the court said: "In addition to this, there is also the admitted failure to have the customary crossing signal board which, as a matter of common knowledge, travelers on the highway of Virginia have been accustomed to regard

as a proclamation of danger and a warning that a railroad crossing is being approached. We think that the question whether the failure to provide this sign was a proximate cause of the accident should have been submitted to the jury.''

Another case where there was no sign board or other warning at a crossing which was blocked by a stationary flatcar is Carson v. Baldwin et al., Trustees, 346 Mo. 984, 144 S. W. (2d) 134, 136, wherein the Supreme Court of Missouri said: ''Appellant makes the further contention that the court erred in submitting the case to the jury because there were no special conditions or circumstances peculiar to the crossing which made it so unusually hazardous as to require the maintenance of a watchman or warning light. It is not denied that there was no warning of any kind of the presence of the car except the car itself. Where special conditions create unusual hazards at a crossing some warning to travelers of the approach or presence of a train at the crossing may be required in the exercise of ordinary care. This is so for the reason a train may not be seen in time to prevent a collision because of such peculiar conditions. Poehler v. Lonsdale, [235] Mo. App. [202], 129 S. W. (2d) 59; Elliott v. Missouri Pac. R. Co., 227 Mo. App. 225, 52 S. W. (2d) 448; Roshel v. Litchfield & M. R. Co., Mo. App., 112 S. W. (2d) 876; Homan v. Missouri Pac. R. Co., 334 Mo. 61, 64 S. W. (2d) 617; Toeneboehn v. St. L[ouis] S[an] F[rancisco] R. Co., 317 Mo. 1096, 298 S. W. 795. Testimony in behalf of plaintiff shows that the flatcar which blocked the street saddled it squarely so that only the narrow edge of the platform of the car would be visible to persons coming along the street; the car was not in motion, but was at rest and silent; the crossing was unlighted on the side plaintiff was approaching; a boxcar standing on an adjoining track also blocked the view; the street was a heavily travelled one in Rich Hill; the surface of the street inclined down to the tracks which tilted the beam of the headlights away from the

edge of the platform of the car; a light fog or mist reduced visibility to a slight degree. Under these circumstances we believe the trial court properly submitted the case to the jury.''

Since the advent of improved highways and the tremendous increase in automobile traffic ▮ ▮ the courts of our land have gradually become more liberal in applying the rule that where the conditions and circumstances are such that the employees of a railroad know, or in the exercise of reasonable care should know, that a person driving upon a highway at a reasonable rate of speed, in an automobile properly equipped with lights and brakes and carefully operated, could not see or might not be able to see cars blocking a public crossing in time to avoid a collision therewith, the question of negligence of the railroad is for determination by a jury. In the earlier cases the rule was recognized but seldom applied by the courts, as to which see annotations in 15 A. L. R. 901, 56 A. L. R. 1114, and 99 A. L. R. 1454, on the subject of the liability of a railroad for the injury due to road vehicle running into train or car standing on highway crossing. By 1946, however, the decisions which recognized and applied the above mentioned rule had increased to such extent that the editors of American Law Reports found it necessary to add additional subdivisions to their annotation on this subject as found in 161 A. L. R. 111. Illustrative of the trend of many of the decisions in recent years we quote from the last cited annotation.

''The fact that railroad cars are standing on a crossing rather than moving over it presents an increased hazard to the motorist for the reason that a moving train makes noise and that moving objects are more easily seen because there are spaces between the cars and possible differences in colors and sizes of the cars; and therefore the railroad should exercise greater care when trains are standing upon a crossing than when they are moving over it.'' 161 A. L. R. 119.

"Practically all of the accidents involved in the cases discussed in this annotation occurred at night. And in a large proportion of them the plaintiffs contended that, although the headlights on their motor vehicles were in good condition, they did not see the railroad car or engine on the crossing until it was too làte to avoid the accident.

"Frequently the conditions revealed by automobile headlights constitute a trap for a careful motorist, so that he has an illusion that the crossing is safe and unobstructed. In this connection the courts may consider the facts that a dark railroad car will absorb a considerable proportion of the light rays which strike it, and that a large proportion of the rays which are actually reflected will travel in various directions, so that only a relatively small proportion of the rays will register on the eyes of the motorist. Likewise the court may consider the facts that the dark surface of a street will absorb a large proportion of the light cast upon it and will reflect less light than a street of lighter surface, and that even a relatively light-colored concrete pavement will absorb a considerable proportion of the light rays cast upon it.

"The dark surface of a railroad car may blend in color with that of the street and the general background at night so that it is difficult to see the obstruction. Again, a railroad car is ordinarily so large that a headlight strikes only a small part of it and the remainder of the car blends into a dark background so as to create a temporary illusion that the car is but a part of the background.

"Where a railroad car straddles the highway, a trap may be presented in some situations, because most cars stand at least as high as the top of an automobile headlight, and where the law requires headlights to be so focused that they will strike the pavement at some point ahead of the motor vehicle the powerful center of the headlights will never come in contact with the body of the railroad car on a level highway, and only the rel-

atively weak rays of light on the upper edge of the beam will strike the car. Moreover, where there is a downgrade toward the crossing but the crossing itself is located on level ground at the bottom of the decline or is elevated slightly above the surrounding land, it is even more apparent that the headlight beams will be cast down under the railroad car or on the surface of the road itself so that the obstruction cannot be seen until the vehicle is close to it; and in some cases the powerful center of the headlight beam may actually reveal the road and objects beyond the crossing before the railroad car becomes visible. And if the road is on an upgrade as it approaches the crossing the light beams from the headlights will be raised over the standing car, particularly where it is a flatcar or logging car, until the road vehicle is close to the crossing.'' 161 A. L. R. pages 121-123.

The following are some of the cases where it was held that the question of the railroad company's negligence in failing to exercise reasonable care to give reasonable warning of the obstruction of a public crossing, and the question whether plaintiff was guilty of contributory negligence in driving into such obstruction, was an issue for decision by a jury: Hendrickson v. Union Pac. R. Co., 17 Wash. (2d) 548, 136 P. (2d) 438, 161 A. L. R. 96; Southern Ry. Co. v. Toney, 4 Cir., 156 F. (2d) 261; Mann v. Central of Georgia Ry. Co., 43 Ga. App. 708, 160 S. E. 131; Central of Georgia Ry. Co. v. Mann, 48 Ga. App. 668, 173 S. E. 180; Shelley v. Pollard, 55 Ga. App. 88, 189 S. E. 570; Central of Georgia Ry. Co. v. Heard, 36 Ga. App. 332, 136 S. E. 533; Southern Ry. Co. v. Lowry, 59 Ga. App. 109, 200 S. E. 553; Courson v. Atlanta, B. & C. R. Co., 70 Ga. App. 318, 28 S. E. (2d) 313; Spiers v. Atlantic Coast Line R. Co., 174 S. C. 508, 178 S E. 136; Lawrence v. Southern Ry. Carolina Div., 169 S. C. 1, 167 S. E. 839; Bober v. Southern Ry. Co., 151 S. C. 459, 149 S. E. 257; Prescott v. Hines, 114 S. C. 262, 103 S. E. 543; Louisville & N. R. Co. v. Revlett, Ind. App., 64 N.

E. (2d) 32, affirmed by Supreme Court, 224 Ind. 313, 65 N. E. (2d) 731; Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N. W. (2d) 120; Jones v. Thompson, Trustee, Mo. App., 207 S. W. (2d) 517; Elliott v. Missouri Pac. R. Co., 227 Mo. App. 225, 52 S. W. (2d) 448; Finn v. Spokane, P. & S. Ry. Co., Or., 214 P. (2d) 354; Broberg v. Northern Pac. Ry. Co., 120 Mont. 280, 182 P. (2d) 851; Icsman v. New York Central R. Co., 85 Ohio App. 47, 87 N. E. (2d) 829; Powell v. Virginian Ry. Co., 187 Va. 384, 46 S. E. (2d) 429; Atlantic Coast Line R. Co. v. Church, 120 Va. 725, 92 S. E. 905; Texas & N. O. R. Co. v. Davis, Tex. Civ. App., 210 S. W. (2d) 195; Henwood, Trustee, v. Gilliam, Tex. Civ. App., 207 S. W. (2d) 904; Missouri-Kansas-Texas R. Co. v. McLain, 133 Tex. 484, 126 S. W. (2d) 474; Orange & N. W. R. Co. v. Harris, Tex. Civ. App., 57 S. W. (2d) 931; Hofstedt v. Southern Pac. Co., Cal. App., 1 P. (2d) 470; Richard v. Maine Central R. Co., 132 Me. 197, 168 A. 811; Squyres v. Baldwin, Trustee, 191 La. 249, 185 So. 14.

We are fully cognizant of the fact that in a few cases this court has held that the negligence of a railroad company in failing to maintain the statutory sign board at a public crossing did not proximately contribute to the collision of a motorist with a train at the crossing. Illustrative of these decisions is Hines v. McCullers, 121 Miss. 666, 676, 83 So. 734, where an automobile was struck by a train in the day time upon a crossing which was elevated several feet above the level of the approaching roadway and with which the driver was thoroughly familiar and knew that she was about to cross. But in a case such as here presented, in view of the downgrade in the highway, and the beam of plaintiff's headlights, the nature of the obstruction upon the crossing, the fact that plaintiff was traveling in the darkness of the night and looking for the stop sign and depending upon such a sign to warn him of the proximity of the track, and that the company had not erected such a sign, and that the company made no explanation whatever as to the ob-

struction of the crossing, we are of the opinion that the trial court erred in sustaining the motion for a directed verdict at the close of plaintiff's evidence. This is not a repudiation of the rule announced in the Holifield and other cases of similar import, but is simply a recognition of the exception to the general rule as therein set forth. The judgment of the trial court is accordingly reversed and the cause remanded.

Reversed and remanded.

**Roberds, J.** (dissenting).

As stated in the able controlling opinion, this Court is committed to the rule that occupancy of the entire crossing by a railroad car is itself sufficient warning of the presence of the car upon the crossing. No other warning is necessary or required. This applies to flat cars, whether moving or standing still. Spilman v. Gulf & Ship Island R. Co., 173 Miss. 725, 163 So. 445, citing Southern Railway Co. v. Lambert, 230 Ala. 162, 160 So. 262. The last pronouncement of the rule by this Court is in Illinois Central R. Co. v. McNeil, 205 Miss: 807, 39 So. (2d) 490. But appellant says the circumstances here were peculiar and exceptional, taking this case out of the general rule. As I understand, his contention is that the exception lies in a combination of three sets of circumstances.

One is the dip in the road. No one claims this was more than a slight dip, or depression. This was a paved road 18 feet wide, muchly traveled. Naturally any dip, or depression, in such a highway would be slight. Witnesses place this from 80 to 180 feet north of the railroad crossing. Appellant says before arriving at this point the lights of his car were above the railroad track but upon reaching it they came down upon the track. Gamble, a witness for appellant, actually measured the distance at which one approaching the railroad from the north at night would see the railroad, using standard lights, such as appellant said he had upon his car. The distance was

275 feet. In any event, it is not seen how the existence of this depression could require the railroad to place lights, or unusual signals or warnings, of the existence of its cars upon the crossing, for the very simple reason there is not the slightest intimation the railroad ever head of such depression in the road. To so require would make it necessary for every railroad to examine the public highways for appreciable distances on either side of its crossings to ascertain some defect in the public road, which, when passed over by an automobile, might, as a result of the springs under the car, cause the lights thereof to be momentarily raised above or lowered upon the road, and if such defect be found, then to place extra lights or signals as the train, in its legitimate business, moved over or stood upon the crossing. Such a requirement would, of course, be utterly unreasonable.

The second condition urged as bringing this case within the exception is that this was a pulpwood car. The proof is it was 36 to 40 feet long and was standing entirely across the crossing. Royals, a railway brakeman, a witness for plaintiff, said this car was 6 feet high. In another place he seems to place the height at 8 feet. Plaintiff himself said the car was of sufficient height above the ground to permit the front of his automobile to run under it. There is nothing in the evidence showing this pulpwood railroad car to be less a warning than a flat car, and, as stated, this Court has held that the existence of a flat car is notice of its presence.

The third exceptional circumstance relied upon by appellant is that he says he was not looking for the railroad track but for a crossing signal to the right of the public highway to inform him the railroad was there. Well, the railroad would hardly be guilty of negligence resulting from the act of the plaintiff in trying to see something to the side of the road on a dark night instead of looking for the track in direct line of his lights. But, under the circumstances here, this contention, to me is absurd. The proof discloses plaintiff, for 40 years, all of his life,

had lived within the neighborhood of this crossing. At the time of the accident he was operating a store at Taylorsville, some 11 miles north of Soso, on the same highway. In January, 1948, he moved to Summerland, 6 miles north of Soso, on the same public highway. He admitted he had traveled this road and crossed this railroad at Soso two or three times a week for the past 20 years. It is not an unwarranted assumption he had crossed this railroad at this place some 3,000 times. Soso is a small community. The road upon which plaintiff was traveling is the only public highway through the community. The proof discloses that within a distance of 700 feet north of the crossing there are five buildings along the west side of the highway. There appear to be none on the east of the highway. For that 700 feet, as a traveler approaches from the north, the railroad track is plainly visible in the daytime. There is nothing to obstruct the view. Plaintiff was familiar with every one of these buildings, knew who occupied them and the character of business being conducted therein. One structure, a gas station, at the time of the accident was, and for a long time prior thereto had been, located just north of the railroad track on the west side of the highway. Plaintiff had patronized that place. Having crossed this railroad for these many years, being entirely familiar with all of the surroundings, how can it be said, with any reason whatever, that, as a normal man, he did not know the location of the railroad? Why was he looking for a crossing sign which he must have known had never been there? Indeed, he is perhaps considerably above the average in ability. At the time of the trial he was operating a farm, a gas station and a grocery store. So we have the spectacle of a normal man claiming he was looking for a sign he knew was not there to inform him of the existence of a railroad he knew was there, and, not getting the information, proceeding to run into a train lawfully occupying its own tracks, of which occupancy the law charged him with notice. But his own testimony disproves his claim he

needed a crossing sign to inform him of the existence of the railroad. At one point he testified "I knew the railroad was there somewhere, but I didn't know just where". He was asked whether he was thinking of the railroad track and he replied, "that's right, just wasn't thinking about the railroad. I was looking ahead of my car." Law suits should not be permitted to rest upon absurdities.

This accident occurred November 11, 1948. Afterwards plaintiff gave this statement describing the manner of the accident: "I am the owner and was driving the 1947 Model Pontiac Two Door Sedan (Torpedo type) involved in collision with I C freight train at Soso, Miss. about 10:30 P. M. Nov. 11, 1948. I was the only occupant of auto. The train involved was going toward Saratoga and I was traveling toward Laurel on Highway 20. There is a curve in the highway about 3 to 400 feet north of the track and I would judge I was making about 40 to 45 miles per hour. After rounding this curve there is a sharp decline in the road and the car lights did not show upon the tracks until I was within 35 to 40 feet of the track and it was then that I first noticed a car standing on the crossing. I applied my brakes and the auto skidded into the side of the car, striking the car between the trucks. The auto was jammed up under the car and we had to let the air out of the tires to get it out from under the car. The only train man around was the conductor, who was at the depot about 75 feet west. The only injuries I sustained was a small cut on the forehead and deep bruise in lower part of chest on left side, evidently caused by being thrown against the steering wheel. I was wearing glasses at the time and they were broken."

In any event it is logically inescapable that the absence of the crossing sign had no causal connection whatever with the accident, since, as held by this Court, the presence of the railroad car upon the crossing was just as much (and that night more) a warning of the existence of the railroad track than a crossing sign could have been.

In my view there is no testimony in this record from

which a jury should be permitted to find that the railroad was guilty of negligence which produced the injury for which suit is brought. The action of the lower court should be affirmed.

McGehee, C. J. (dissenting).

If on the occasion complained of the plaintiff had been unfamiliar with the location of the railroad track and its close proximity to buildings that he saw in approaching the same, I think we would have a different case than that presented here. But when a motorist is thoroughly familiar with the location of a railroad track and the relative distance therefrom of buildings which he sees and passes while approaching the same, there would seem to be no reason or excuse for his driving his car against a train that is lawfully occupying the crossing for the legitimate purposes of the railroad's business, and I think when a motorist does drive his automobile against a train under such circumstances his injuries are due solely to his own negligence and that there is no liability against the railroad company on account thereof.