BIRDSONG *v*. CITY OF CLARKSDALE.

(In Banc. Sept. 22, 1941.)

[3 So. (2d) 827. No. 34625.]

J. H. O'Neal and John W. Crisler, both of Clarksdale, for appellant.

**W. W. Venable,** of Clarksdale, for appellee.

**J. H. O'Neal** and **John W. Crisler**, both of Clarksdale, for appellant, in reply.

Argued orally by **J. H. O'Neal** and **John W. Crisler,** for appellant, and by **W. W. Venable,** for appellee.

**Griffith, J.,** delivered the opinion of the Court.

Cherry Street, running east and west, is one of the principal residential streets in the City of Clarksdale. It is 80 feet wide. On each side, next to the property lines, is a concrete sidewalk 4 feet wide, and on each side be-

tween the sidewalks and the central hard-surfaced pavement is a neutral strip about 13 or 14 feet wide. This neutral area was used as a parking strip for automobiles, and for going to and from automobiles and the like and for reaching the paved portion of the street, and had been habitually and customarily so used for a long time.

Appellant lived on the north side of this street some 400 feet from the east corner and about 300 feet from the corner to the west. Within the neutral strip and to the eastward of appellant's residence but in front of the property adjoining appellant on the east, there was a water meter located near the paved portion of the street. The meter was leaking, and this, aided by rains, had caused a ditch to form running from the meter in a northerly direction towards the sidewalk. This ditch was about 7 feet long, 2½ feet wide and 2 feet deep. The City had actual notice of the existence of this ditch, and for a sufficient time to have remedied the situation or else to have guarded against it. There were no lights so located as to disclose the ditch at night, but there was sufficient of a diffused light to reveal the outlines of an automobile when standing on the neutral strip.

About midnight of the night in question, appellant was anxious to go to the business section of the City, and had ordered a taxicab for that purpose. While appellant was waiting on the sidewalk in front of his house for the arrival of the taxicab, then considerably overdue, appellant heard a neighbor getting into his automobile, which was parked a few feet to the east of the water meter, and knowing that this neighbor customarily went to work about this hour, appellant called to him and ran toward the neighbor's automobile, and in doing so went in a southeasterly direction upon and partly across the neutral strip. Thus the ditch lay between the point where appellant left the sidewalk and the point where the neighbor's car was located, and in making his way, as mentioned, appellant fell into the ditch and was injured. He did not know of the existence of the ditch, according to

the present record, and as already stated, there was not enough light to disclose it.

The trial court granted a peremptory charge in favor of the City, and that action is sought to be supported on the argument that appellant was guilty of reckless negligence, considering the place and circumstances of the injury, and that in consequence there should be no liability therefor.

In 7 McQuillan Munic. Corp. (2 Ed.), pp. 84, 85, it is said that the "space between the sidewalk and the roadway is a part of the street, although not intended for actual travel, and the municipality must protect pedestrians and other travelers from injury from defects in such part of the street"; and to the same effect is the text 13 R. C. L., p. 383. Under modern conditions the rule is not to be so broadly stated, and is subject to exceptions, as may be seen from an examination of the cases and annotations cited in 25 Am. Jur., sec. 407, pp. 702, 703. The question will depend, therefore, more largely upon what under the proof had been, up to the time of the injury, the customary use which had prevailed as respects the neutral strip. Reasonable care must be exercised to keep streets in a reasonably safe condition for their accustomed use, in the accustomed manner of that use; and in order that this duty shall be performed, the city must use reasonable care to see that the street is kept reasonably free of such real dangers as will imperil the traveler when he is making the customary use, in the customary manner, and in the use exercises such caution as under all the circumstances of the case should reasonably have been expected of him.

We have already stated that the neutral strip in question had been for a long time habitually and customarily used as a parking space for automobiles, and for going to and from automobiles and the like and for reaching the paved portion of the street. It follows under the rule that the neutral strip here in question was as much a part of the street, so far as pedestrians were concerned,

as was any other part of the thoroughfare; and the rule of reasonable safety is as obligatory in respect to the use at night as in the day.

And in the use of any portion of the street which is within the stated rule, any person, who has no actual knowledge to the contrary, has the right to presume and to act on the presumption that the way is reasonably safe for the accustomed use, whether by day or night, and he is not required to anticipate or be constantly on the alert for unreasonable dangers in his path to which his attention has not been called or which would not be discovered by the use of ordinary care, all the circumstances considered. 7 McQuillan Munic. Corp. (2 Ed.), pp. 265 et seq.; 43 C. J., pp. 1078, 1095; Vicksburg v. Harralson, 136 Miss. 872, 884, 101 So. 713, 39 A. L. R. 777.

Moreover, the general rule by the weight of authority is, and especially as to residential streets, that a person desiring to cross a street or to go into a street from the sidewalk, either in the nighttime or in the daytime, is not confined to a crossing but may assume that all parts of the street which are customarily traveled are reasonably safe, that is to say, are free from unreasonable dangers, and may therefore cross it or cross into it at any point without being guilty of negligence as a matter of law; and he may cross diagonally. 25 Am. Jur., pp. 744, 745, and cases there cited.

Applying the foregoing rules to the facts of this case, as stated, it would not be permissible to say, as a matter of law by a peremptory instruction, that appellant would have been guilty of negligence had he walked on the occasion in question, instead of running as he did. But had he walked he would still have fallen into the ditch, of which he had no knowledge, and which was disclosed by no light. A guard light or lights could easily have been placed there by the City. And since appellant would have been injured in all probability had he walked, there is no real basis for wholly excluding him because he ran.

In what has been above said we have taken the evidence and the record thereof in the light of the most favorable conclusions in behalf of appellant which the jury could reasonably have drawn therefrom, had the case been submitted to them on proper instructions. This must be done when considering the propriety of a peremptory charge. But if we should proceed from the opposite viewpoint, this would admit of no greater criticism of appellant than that he may have been guilty of contributory negligence—not of such negligence as would constitute the sole proximate cause of the injury. Had he known of the ditch and its precise location, and with the present consciousness thereof had attempted to jump it and had failed to clear it, this conscious and deliberate action might be said to have been the sole proximate cause of the injury; but there is nothing in this record of that or any equivalent import.

And if his negligence was contributory—and this is the most that could be said of it, even if that is to be said—this would not wholly bar him of recovery under our comparative negligence statute, Section 511, Code 1930, which is applicable to municipalities as it is to other defendants. Jordan v. City of Lexington, 133 Miss. 440, 97 So. 758.

But the City argues that when an injured user of streets is negligent in the use thereof, it is not a question of contributory or comparative negligence, but simply that the municipality owes no duty to a negligent user; and it refers to the formula used by this Court in Greenville v. Laury, 172 Miss. 118, 122, 159 So. 121, 123, that the municipality owes the duty "to exercise ordinary care to keep its streets reasonably safe for use of persons exercising reasonable care and caution." The City says that this means that unless the user exercises reasonable care and caution the city owes him no duty, however remiss the city may have been. It says that this formula sets over into a class to whom the city owes no duty, all those who are chargeable with any negligence in the

use of the streets, and that since the city owes to this class no duty, the comparative negligence statute is not involved.

The City is correct that the quoted formula has nothing to do with contributory or comparative negligence. It was the established formula used in this State long before the comparative negligence statute was enacted, and is the formula which is in use in many states where contributory negligence is still a complete defense. The formula has to do with the measure of the care which the city must exercise, and has no such purpose, so far as it in itself is concerned, as to absolve the city, however negligent it may have been, if only some negligence may be shown against the injured person, and solely because of the latter. The expression is a brief definition of the duty of the city but does not operate as a deprivation of the right of the citizen. It sets up a standard of conduct for the city under which it may be reasonably absolved, but not a criterion by which the citizen shall be unreasonably barred.

The problems with which municipalities must each deal in the construction and maintenance of streets, over the considerable area involved, are numerous and varied, such, for instance, as the topography of the area, the necessities that other than the purposes of travel must be accommodated therein, and many other difficulties and necessities—difficulties which are often so arduous that the best that the municipality can reasonably do is still far from furnishing or keeping a perfect street or way. A street may have to go down a decline of twenty degrees or more, and this may in the nature of things be unsafe when there is ice or sleet, but the municipality would not be liable for this; while, on the other hand, if the floor in an industrial plant were constructed on any such a plan of declivity, that of itself would condemn it as an unreasonably unsafe place to work.

The municipality has the right, therefore, in the construction and maintenance of its streets to act in the light

of expectation that the users thereof will look to the physical aspects and the natural condition of things around them, and will also anticipate and avoid such things as stepdowns, fire plugs, electric light poles, letter boxes, and the like, which are reasonably to be expected, when reasonably placed, alongside walks and in neutral strips, according to the character of the particular area in which the traveler is moving, and that in any event he must not expect a perfect way; and this is what is meant by the formula that reasonable care must be taken to make the streets safe for the use of those who on their part use reasonable care—not that a municipality may leave an unlighted ditch, such as in this case, in a traveled way and then expect and say that somehow the traveler should have avoided it. See the interesting opinion in Wheeler v. Town of Westport, 30 Wis. 392. All this is what is meant by the text 7 McQuillan Munic. Corp. (2 Ed.), p. 30, that "the city has a right in the maintenance of its walks to expect a reasonable degree of care from all persons; and when its walks are safe for the ordinarily prudent use, there is no negligence." And see also op. cit., pp. 38 et seq. The measure of care imposed on the city is defined in terms of an anticipated use and is modified accordingly; but if the city has failed to fulfill this measure of care, an its negligence concurs with or contributes to an injury, the injured person is not barred although he also was guilty of negligence—unless, of course, his negligence was such as to constitute the sole proximate cause.

Reversed and remanded.