Shows, Minor by Next Friend *v.* City of Hattiesburg

No. 40402 October 14, 1957 97 So. 2d 366

February 4, 1957 92 So. 2d 365

*Carl E. Berry, Jr., Joseph H. Stevens,* Hattiesburg, *L. Barrett Jones,* Jackson, for appellants.

*C. W. Sullivan, D. Gary Sutherland,* Hattiesburg, for appellee.

Roberds, P. J.

Elton Jack Shows, a minor eight years of age, acting through L. D. Shows, his father and next friend, by his declaration in the circuit court, sought to recover a personal decree against the City of Hattiesburg, Mississippi, for personal injuries suffered by him when he fell into a drainage ditch, or drain basin, alleged to have been maintained by the City in a negligent manner, and which negligence was the cause of his injuries. The City, by its answer, denied that it was negligent, and also asserted that Jack's own negligence produced his injuries.

The case was tried at the May 1955 term of the circuit court, resulting in a verdict for plaintiff-appellant (whom, for sake of brevity, we will call plaintiff) for $1,000.00. The learned circuit judge set that verdict aside as not being supported by the evidence, and granted a new trial. The case was again tried at the July 1955 term of court, and the trial judge, on motion of the City, granted it a peremptory instruction.

On this appeal plaintiff contends we should reverse the trial court in both actions and re-instate the judgment entered on the verdict upon the first trial.

Both actions of the lower court may be considered together. They both rest upon the premise that the testimony failed to show any negligence on the part of the

City contributing to the injury, and presented no question for the jury to pass upon in that regard.

The record discloses no substantial dispute in the testimony on the question of negligence of the City.

McInnis and Frederick Streets intersect and cross each other. The drain basin is at one of these intersections. Two culverts, extending partly under the streets, empty into this ditch or basin. We will call it a ditch. The ends of the culverts lack some two feet of joining, or coming together. The culverts are fifteen inches in diameter. They are some four feet in length. They are used for street drainage purposes. The ditch was some thirty inches deep. At the time the injury occurred it was largely filled with leaves, weeds, sticks, broken glass bottles, brickbats and cans. From the photographs in the record the ditch appears to be some four or five feet long and two or three feet wide. On one side of it is a paved street. On the other side, and running parallel with the ditch, is a sidewalk. This is a dirt walkway. It is about five feet wide. There is a path used for walking located about the middle of this five foot strip. Between the walking path and the ditch grass has grown up. On the opposite side of the two and a half foot walking path is also grass, and on that side of the five foot sidewalk, and running parallel with the walkway, is a wire fence. There is no cover to the ditch; it is open. There are no guardrails, or other structure, to deter one from stepping or falling into the ditch.

This ditch is located just across the street from Eaton public school. Many pupils attend that school. Children going to and from the school travel the walking path in the middle of the sidewalk territory along beside the drainage ditch.

The two paved streets have been there for more than twenty-five years. The drainage ditch has existed longer than ten years. The streets and the ditch and the sidewalk and walking path in the middle of the walkway

were constructed by the City and have been maintained by the City since their construction. It is not shown when, if at any time, this situation had been inspected by the City before plaintiff fell into the ditch.

Plaintiff, Elton Jack Shows, was a pupil in the Eaton School. He and his family lived some two blocks from the school building. On November 13, 1954, just before twelve o'clock noon, he was leaving the school building to go to his home for lunch. He came along the walkway strip of the five foot walk beside the ditch. He says he got his feet tangled in the grass which was growing on the walk-strip between the beaten path and the ditch. He fell into the ditch. One of his arms was cut rather badly and he suffered other slight bruises. He was not able to again attend school during the 1954-55 session, and his hospital and doctor bills amounted to $414.15.

 Was negligence on the part of the City a question for the jury? The rule prescribing the duty of municipalities in such cases is uniform in this state. It is that a municipality is liable for injuries resulting from its failure to exercise reasonable care to keep its streets and sidewalks in reasonably safe condition for use by persons exercising reasonable care. City of Laurel v. Hutto, 220 Miss. 253, 70 So. 2d 605; Birdsong v. City of Clarksdale, 191 Miss. 532, 3 So. 2d 827, and many other cases collected under the heading of ''Municipal Corporations'', 11 Miss. Digest key number 763 (1). And in passing upon the questions we should take ''the evidence and the record thereof in the light of the most favorable conclusions in behalf of appellant which the jury could reasonably have drawn therefrom, had the case been submitted to them on proper instructions''. Birdsong v. City of Clarksdale, supra. We need not again detail the facts. It is sufficient to say that the city had full authority and control over the streets, the ditch, culverts, walkways, and every physical thing at the scene where the accident happened. It construct-

ed and maintained these things. The ditch was full of debris. There was no covering over, or protective bar rails about the ditch. It was just across the street from a large city school. Many school children daily passed by this opening. This situation had existed for many years. The City had full knowledge of the facts. The city engineers who testified in the case did not state when an inspection of this condition had been made before this accident occurred. Without belaboring the question we think this situation presented a question for the jury under proper instructions. The jury passed upon it on the first trial and found the City did not exercise the care required by law. The testimony justified that verdict.

But the City says that the negligence of plaintiff was the sole cause of his injury. Assuming, but not deciding, that a child, eight years of age, can be guilty of contributory negligence, such negligence under the evidence in this case, would only be contributory. "And if his negligence was contributory—and this is the most that can be said of it, even if that is to be said—this would not wholly bar him of recovery under our comparative negligence statute, Section 511, Code of 1930, which is applicable to municipalities as it is to other defendants. Jordan v. City of Lexington, 133 Miss. 440, 97 So. 758." Birdsong v. City of Clarksdale, supra. Such negligence is not a bar to recovery, but should be considered by the jury in determining the amount of the damage. Section 1454, Miss. Code 1942. (Hn 5) We cannot say the jury did not do that in this case. Under the proof the injury to plaintiff was serious and painful. He was not able to return to school during the 1954-55 term, and there is evidence indicating that, to some extent, his injuries may be permanent. The bills of the doctor and hospital amounted to $414.15. The verdict of the jury was $1,000.00. Presumably the jurors, in

arriving at the amount of the verdict, took into consideration the actions of plaintiff.

■■ ■ The case will be reversed and the judgment entered on the jury verdict at the first trial of the case will be re-instated here, which is the procedure adopted in Grice v. Central Electric Power Association, 230 Miss. 437, 92 So. 2d 837.

Reversed and judgment here.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* concur.

## ON SUGGESTION OF DIMINUTION OF THE RECORD AND MOTION FOR A WRIT OF CERTIORARI

The above stated cause was tried in the Circuit Court of Forrest County. A verdict for $1,000 and costs was rendered at the April 1955 term of that court in favor of the appellant, as plaintiff in that court, as shown by the record on appeal now before us. Thereupon, a motion was filed by the appellee, City of Hattiesburg, to set aside the judgment and to grant the said defendant a new trial. The motion for a new trial was sustained and the cause came on to be heard again at the July 1955 term of the court, and at the conclusion of that trial a peremptory instruction was granted in favor of the dedendant, and the plaintiff has appealed to this Court.

On the suggestion of dimunition of the record and motion for a writ of certiorari, it is assigned (1) that the record now before us does not contain the transcript of the testimony taken on the first trial of the cause in which the appellant obtained a verdict and judgment which was later set aside by the circuit court; (2) that the record now before us does not contain the motion filed by the appellant to require the court reporter to transcribe and file her notes of the evidence taken on the first trial; and (3) that the record now before us does not contain the order of the judge overruling that motion.

██ ██ There is no way for this Court to determine whether or not the circuit court was in error in setting aside the judgment of $1,000 and costs in favor of the plaintiff and awarding the defendant a new trial without a transcript of the testimony taken on the first trial. Where the circuit court sets aside a former judgment and orders a new trial the principal question presented to us for decision is whether or not the circuit court committed error in setting aside the first judgment. ██ ██ The suggestion for diminution of the record must therefore be sustained, and the case held in abeyance on our docket for consideration and decision after the transcript of the evidence taken on the first trial shall have been filed with this Court, and the case is then submitted to us for decision.

If the circuit clerk has the court reporter's transcript of the evidence taken at the first trial, it should be included in or filed with the record sent here on appeal. On the other hand, since the court reporter was given written notice on July 7, 1955, to transcribe and file her notes with the clerk of the circuit court, she should do so unless she has already transcribed and filed the same. The motion filed by the plaintiff in the circuit court asking that court to require the court reporter to transcribe and file the transcript of the evidence taken on the first trial should have been sustained.

██ ██ Motion for dimunition of the record is sustained, but no authority is cited to show that this Court has jurisdiction by certiorari over a court reporter. Nor can we reverse the order of the circuit court in overuling the motion of plaintiff wherein the plaintiff asked the court to require the court reporter to transcribe and file the transcript of the evidence taken on the first trial since that order, if entered, is not in the record. ██ ██ The plaintiff was entitled to the relief sought in the circuit court in regard to having the evidence transcribed, and is not without remedy.

Motion for dimunition of the record so far as the circuit clerk is concerned is sustained.

*Hall, Kyle, Arrington* and *Gillespie, JJ.,* concur.