No. 12,911.

POTTS ET AL *v.* BIRD.
(27 P. [2d] 745)

Decided November 27, 1933.

Mr. WALTER E. SCHWED, for plaintiffs in error.

Messrs. STRICKLER & WENDELKEN, Mr. GERALD W. BENNETT, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PARTIES will be herein referred to as they appeared in the trial court.

Mamie Katherine Bird, as plaintiff, recovered judgment in the court below in the sum of $5,000, against James A. and Clara E. Potts, on account of the death of her husband. To review that judgment, defendants bring error.

Outside the city limits of Colorado Springs, Colorado,

Boulder street runs in an easterly direction and intersects Bonfoy avenue, which runs in a northerly and southerly direction. About 1:30 p. m. on October 17, 1930, a clear day, plaintiff's deceased husband, William E. Bird, was driving a Ford sedan automobile easterly on Boulder street, and at the same time, Clara Potts was driving a Dodge sedan south on Bonfoy avenue. The automobiles collided at the intersection. Plaintiff alleges that defendant Potts, negligently failed and refused to yield the right of way to Bird. Defendants answered denying negligence and alleged that the negligence of Bird caused or contributed to the accident and injuries.

There was only one eyewitness to the accident, defendant, Clara Potts, who was driving one of the automobiles. Other witnesses testified to matters before and after the accident.

Clara Potts, testifying for herself, said she had just left her home two blocks away on Bonfoy avenue and was driving about 15 or 20 miles per hour; that when she approached the intersection of Boulder street and Bonfoy avenue, she looked both ways and could not see anyone coming until just as she reached the intersection, she saw Bird's car coming east on Boulder street on the wrong side of the street, "just like a shot toward me," he was coming about 40 miles per hour; she did not have time to think, but just knew he was going to hit her. Bird's car hit her car a little to the back of the middle on the right side; that when she first saw Bird's car, she was nearer to the point where their paths would intersect than he was.

A witness for plaintiff testified that he was standing in front of his grocery store on Boulder street and saw Bird go by his store at about 20 miles per hour he guessed, and saw a piece of cardboard in the left front window of Bird's car. He did not know whether Bird was increasing or decreasing his speed. Plaintiff testified that her husband had been driving his car in that

condition about two weeks and on several occasions had asked him, "Why don't you put a glass in there and have the car in shape to go some place?"

Three witnesses for defendant, employed at a garage where Bird's car was taken after the accident, testified that the entire glass in the left front door of the car was out and there was a cardboard filling the entire space; that a hole four inches high and about eight or nine inches across was cut in the cardboard. Other witnesses testified that there was a dent in the right front door of Potts' car and the back door was smashed in and the dent appeared to have been made by a headlight; that the left front wheel of Bird's car was broken, the left headlight was crushed and the right one bent back and the whole front end of the car was crushed more or less.

There are 31 assignments of error and upon examination of the entire record we are convinced that there was sufficient error called to the attention of the trial court by defendant's motion for a new trial, to have required the granting of that motion.

We here point out the errors that have specially attracted our attention. Instruction No. 2 given by the court is as follows:

"The statute of this state, as applicable to this case, provides that no vehicle shall be propelled along or upon any public highway at a speed exceeding thirty-five miles per hour. All vehicles shall be propelled along all public highways in a careful and proper manner and with due regard for the safety and convenience of vehicles thereon. Vehicles shall travel on the right side of public highways, unless the road ahead on the left is clear and unobstructed for at least 100 yards; and in all cases, when crossing intersecting highways, must be able to stop within the distance possible of view. The operator of a vehicle shall yield the right of way at intersection of their paths to a vehicle approaching from the right, unless such vehicle from the right is farther from the

point of the intersection of their paths than such first named vehicle.

"The court further instructs you that the words closing the last sentence hereinabove stated, taken from the statute, is ambiguous, unintelligible, uncertain, and a strict interpretation thereof would lead to rather than prevent accidents, and therefore, the court believes that the words 'unless such vehicle from the right is farther from the point of the intersection of their paths than such first named vehicle,' are superfluous, meaningless, and should not be considered by the jury."

This instruction was an attempt to commingle and set out the following sections of the Compiled Laws of 1921. Section 1269 in part, "No vehicle shall be propelled along or upon any public highway at a speed exceeding thirty-five (35) miles per hour; * * *

Section 1270. "(a) All vehicles shall be propelled along all public highways in a careful and proper manner, and with due regard for the safety and convenience of pedestrians and vehicles thereon.

"(b) Vehicles shall travel upon the right side of public highways unless the road ahead on the left side is clear and unobstructed for at least 100 yards, except on mountain roads where vehicles shall be under control at all times, viz.: must be able to stop within the distance possible of view, and in all cases when crossing intersecting highways. Slowly moving vehicles shall keep as far to the right as possible, leaving more swiftly moving vehicles and traffic to the left.
* * *

"(g) Excepting where controlled by such traffic ordinances or regulations as are permitted under this act the operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right unless such vehicle approaching from the right is further from the point of the intersection of their paths than such first named vehicle."

Counsel for defendant in error vigorously sup-

ports the giving of this instruction, as limited by the court, by saying it was justified by the decision of this court in the case of *Hicks v. Cramer*, 87 Colo. 414, 288 Pac. 887. That contention is without merit. In that case this court construed an ordinance of the city of Pueblo. The Pueblo ordinance employed entirely different language to that used in subdivision (g) of section 1270 above quoted. We show the difference by quoting both ordinance and statute. The Pueblo ordinance provides: ''In the event one or more of two or more vehicles shall have entered an intersection, the one nearest the center of the intersection shall have the right of way.'' The statute pertinent here is: ''* * * the operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right unless such vehicle approaching from the right is further from the point of the intersection of their paths than such first named vehicle.'' This instruction wholly destroyed defendant's contention that Bird was on the wrong side of the street and that he was farther away from the point of 'intersection of their paths, by withdrawing it from the consideration of the jury. The court set aside and held for naught the latter portion of the statute and reenacted a statute to fit the case. All of which it cannot do. This statute stood in full force and effect at the time of the accident and was designed to determine the respective rights of motorists on the highway and not to be thrown into the discard by court and jury when a dispute arose as to their rights under this part of the statute.

The instruction as given was a direct charge to the jury to disregard the manner in which the law said the question of right of way is to be determined. No estimate can be placed on the influence this erroneous instruction had on the jury that was prejudicial to defendants. To say the least, it strengthened the weakness of plaintiff's case. We cannot presume that the

jury arrived at a correct verdict if its instructions were erroneous.

■■ Counsel contend that the court erred in its rulings on the admission of certain evidence. Exhibit C in this case is the cardboard which filled the window space of Bird's car. Counsel for defendant strongly urged that this cardboard should have been declared by the court to be an obstruction to the view of the driver. Under all the circumstances in the case, this contention has its appeal; however, there is likely no error in that question having been submitted to the jury, if done so under proper instructions. Plaintiff, to counteract the effect of this exhibit and in an attempt to show that it was not an obstruction, called a witness to the stand who was an automobile mechanic, and the court permitted the witness to testify concerning an experiment he had made in another car with such a cardboard window, said experiment being made at a different date, under differ-ent conditions of the road, at a different rate of speed than that shown by the uncontradicted testimony in this case, and in the absence of other traffic, and to the general effect that Exhibit C would not be an obstruction to the driver's view. This experiment was made by a person having different eyes than those of Bird; with different thoughts in mind, and made for the express and only pur-pose of trying to see through this particular opening in the cardboard to determine the extent of vision. In do-ing so, naturally he would place himself in such a position as would assist materially in extending the view, at an undisturbed moment and under essentially different con-ditions. It is elementary that such an experiment made out of court must be made under similar circumstances to those at the occurrence of the accident before it is ad-missible. The long followed rule regarding such experi-ments is to the effect that they will be excluded where conditions are essentially different. A careful examina-tion of the testimony of this witness and the questions propounded to him, leaves us in no doubt that there was

no showing of similar circumstances and conditions that would justify the admission of this evidence. The court was, therefore, in error in allowing the jury to consider this testimony.

■ As a guidance for further proceeding in this case, we believe we should dispose of one other assignment of error, although we believe it to be without effect, it could be troublesome upon another trial. During the voir dire examination of the jury panel of 20 jurors called in this case, counsel for plaintiff below was permitted by the court, over the objection of the defendants, to ask individually of each juror whether or not he was an "agent, employee, stockholder or interested member in the State Farm Mutual Auto Insurance Company." Counsel for plaintiff in error contends that this question should have been asked of the jurors collectively and not individually and that the asking of said question individually was to prejudice the jurors and to emphasize the fact that an insurance company was interested in the defense of the case. Counsel admits that such a question is a proper question and may be asked of the jurors collectively on voir dire examination. Any question that it is proper to propound collectively, certainly is a proper question to be propounded individually. A proper exercise of the discretion of the trial court will not allow an abuse of this privilege. There was, therefore, no error in this particular.

The judgment of the lower court is reversed and the cause remanded for further proceedings in harmony herewith.

Mr. Justice Butler specially concurs.

Mr. Justice Campbell and Mr. Justice Burke dissent in part.

Mr. Justice Burke, dissenting.

I think instruction No. 2 was right; that it conforms strictly to the decisions of this court; that the opinion

herein is exactly contrary to that in Hicks v. Cramer; that taken together they leave the law on a vital point unsettled; and that the result may be the destruction of life and property by the acts of persons conscientiously endeavoring to obey it. Hence I must dissent and state my reasons.

The city of Pueblo had an ordinance which read: "Of two or more vehicles approaching an intersection the one approaching from the right shall have the right of way.

"*In the event one or more of two or more vehicles shall have entered an intersection, the one nearest the center of the intersection shall have the right of way.*"

In *Hicks v. Cramer,* 87 Colo. 414, 288 Pac. 887, we said: "If any meaning can be construed into this scrambled verbiage it must constitute a license to race for the intersection with the right of way awarded as a prize, not to him who first reaches it, but to him who, at some mythical moment between the start of the flight and its disastrous culmination, shall be nearer the center of the intersection than his competitor. Either the second portion of this ordinance has no meaning or it contradicts the first. Hence it is superfluous or invalid."

Paragraph g of section 1270, p. 498, C. L. 1921, here involved reads: "The operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right *unless such vehicle approaching from the right is further from the point of the intersection of their paths than such first named vehicle.*"

We have now held the italicized portion of the ordinance bad and the italicized portion of the statute good. If the former "has no meaning or contradicts the first" the same must be true of the latter. The principal difference in their language is in favor of the ordinance. There the right of way is tied to "the center of the intersection." That at least is a fixed point. From the time it is sighted by the drivers they have a definite guide.

In the statute the right of way is tied to "the point of the intersection of their paths." This is a variable point, which may shift its position several times as the cars approach each other and can never be located definitely until they pass or collide. As each driver swerves, the guide post moves, the right of way apparently belonging now to one car, now to the other. Any moment the left hand driver gets an inch ahead of the right hand driver the law gives him the right of way. If he loses his "edge" his right of way is lost. Here is that very "license to race for the intersection" condemned in the Hicks case, but with the goal a mere wind-blown thistle.

Since said paragraph g of section 1270 has been repealed no harm might result from this decision, but for the fact that a paragraph of section 87, chapter 122, page 539, S. L. 1931, has been passed in lieu of it. This new statute again confuses the entire subject by giving the right of way to the vehicle which has first "entered the intersection," regardless of whether it comes from right or left. So the race is still on. Moreover, municipalities are probably free to govern the matter, within their boundaries, by ordinance; and if some of them, guided by the court's opinion in this case, pass this statute as a city ordinance then the confusion, on a proposition on whose clarity human life depends, becomes doubly confounded.

I am authorized to say that Mr. Justice Campbell concurs herein.

Mr. Justice Butler, concurring.

The conclusion arrived at by the court seems to me to be sound, and I concur therein.

As I view it, the right of way provision in the statute is free from ambiguity and confusion. Words could not make it clearer. It is so plain that "he who runs may read" and, reading, understand. In *Golden Eagle Dry Goods Co. v. Mockbee,* 68 Colo. 312, 189 Pac. 850, the court had before it an ordinance providing: "Every

driver of a vehicle approaching the intersection of a street or public road shall grant the right of way at such intersection to any vehicle approaching from the right, * * *.'' Of course, the ordinance did not mean that a vehicle approaching from the right a block distant would have the right of way over a vehicle that had entered the intersection. The court had to give the ordinance a reasonable construction. The rule announced was this: ''We think the right rule is that it is the duty of every driver, when approaching a street intersection, to use reasonable care to see whether there is likelihood of collision with any car approaching from the right, and, if there is, to yield to it the right of way, and to keep his car under such control that he can do so.'' The rule there adopted by the court, in construing the ordinance, made the test the ''likelihood'' of collision with a car approaching from the right. Such likelihood, of course, would depend upon several contingencies; for example, the speed of the car approaching from the right; whether or not the speed probably would be increased or diminished; whether or not the car probably would change its course, and if so, in which direction and how far. It is obvious that the probable point of intersection of the lines of travel of the two cars might vary suddenly and considerably from minute to minute and even from second to second. There we have a variable point, which may shift its position several times as the cars approach each other, and the burden is cast upon the drivers to determine whether or not, in view of all the uncertainties described above, there is a ''likelihood'' of collision. And yet the court enforced the ordinance as so construed. The statutory provision involved in this suit is far more likely to prevent collisions than the rule adopted by the court in the Golden Eagle case.

The criticism of the statutory provision really amounts to this, that a better or more reasonable regulation could be adopted. But that question is for legislative, not judicial, determination. The wit of man has not yet de-

vised, and probably never will devise, a traffic regulation that will be perfect. Difficulties will arise under any regulation.

We need not fear an increase of racing as a result of our upholding the statute. Reckless drivers, like the poor, shall be with us always. Such drivers will race for the intersection of the lines of travel of the cars or for the street crossing, whichever will give them the right of way. No traffic regulation can be fool-proof. The statute does not constitute ''a license to race for the intersection.'' The check upon racing is the well-established rule that in approaching an intersection, as well as at all other times, a driver, even when he has the right of way, must exercise reasonable care. If he fails in this respect, he is guilty of negligence, and the fact that he has won the race will be no protection to him. The race may be to the swift, it is true, but a person who is injured through the racer's negligence is entitled to recover judgment. A right of way won by negligent racing can hardly be considered a ''prize.'' It reflects neither honor nor glory upon the victor; it carries with it no profit or immunity, but, on the contrary, may impose a liability.