COBB *v.* WILLIAMS

No. 40237      October 15, 1956      90 So. 2d 17

808

*P. A. Martin, Jr.,* Fulton, for appellant.

*C. R. Bolton,* Tupelo, for appellee.

KYLE, J.

The appellant, Sam Cobb, sued the appellee, Bob L. Williams, in an action for damages for personal injuries alleged to have been sustained by him as a result of a motor vehicle collision that occurred at a county road intersection on Highway No. 78, in Itawamba County, on December 6, 1950, when the appellee, who was driving his pickup truck westwardly along the highway, undertook to execute a left turn at the above mentioned county road intersection, and in doing so collided with the appellant's 2-ton Chevrolet truck, which the appellant was driving eastwardly along the highway.

The case was tried in the Circuit Court of Itawamba County at the September 1955 Term of the court, and the jury returned a verdict for the defendant. Judgment was entered thereon and the plaintiff prosecutes this appeal, and assigns as error (1) that the court erred in

overruling the appellant's motion for a new trial; (2) that the verdict of the jury is contrary to the overwhelming weight of the evidence; and (3) that the court erred in granting to the defendant four instructions, which will be hereinafter referred to.

The plaintiff testified that at the time of the collision he was enroute from New Albany to Carbon Hill, Alabama, to pick up a load of coal. He was driving a 2-ton Chevrolet truck which was owned by Carol Whittington, who was riding in the truck with him. He was driving about 40 miles an hour. He stated that he saw the pickup truck approaching when it was about a quarter of a mile down the road ahead of him. The pickup truck was running at a rate of speed about 25 or 30 miles an hour, and the driver was well over on his own side of the road when he approached the road intersection near Loden's store. The driver gave no signal to indicate that he intended to make a left turn into the gravel road running southwardly from the point of intersection, but merely slowed down a little and turned suddenly across the center of the highway into the travel lane of the eastbound traffic. The plaintiff stated that when he saw the pickup truck making a left turn he was only about ten feet from the crossing. He did not have time to sound his horn or apply his brakes, but he pulled to the right immediately and two wheels of his coal truck were off the pavement when the collision occurred.

The plaintiff testified that the pickup truck struck the coal truck on the left side behind the cab. The impact broke loose the brake line of the coal truck, and the plaintiff was unable to control the movements of the truck thereafter. The truck rolled about 150 feet down the road and turned over. The plaintiff stated that the coal truck was equipped with hydraulic brakes on the front and rear wheels, and the brakes were in good condition prior to the accident. The plaintiff sustained minor injuries as a result of the accident. He was carried

to the hospital at Tupelo and remained there two days, and then returned to his home in New Albany, and was under the doctor's care for a period of six weeks. His back was injured and his chest was bruised, but there were no broken bones.

Carol Whittington, who was riding in the truck with the plaintiff, corroborated the plaintiff's testimony concerning the accident. Whittington stated that the plaintiff was driving at a rate of speed of about 40 miles an hour; that he observed the pickup truck approaching before it reached the intersection; that the defendant did not give any signal to indicate that he intended to turn left at the intersection, and when he executed the left turn the plaintiff cut to the right and the pickup truck hit the rear wheels of the coal truck, knocked the wheels back and tore the brakes loose, and the truck turned over. Whittington stated that the coal truck was about 15 or 20 feet from the road intersection when the driver of the pickup truck cut over in front of the on-coming coal truck, and the plaintiff did not have time to apply his brakes.

James A. Love, State Highway Patrolman, testified that he investigated the accident a short time after it occurred. He saw the defendant at the scene of the accident and questioned him about the accident. The defendant stated that he was making a left turn and did not see the truck. Love testified that the day was cold and rainy and that it was drizzling rain but the visibility was sufficient to enable the driver of a motor vehicle to see several hundred yards each way up and down the highway.

Bob Williams, the defendant, testified that he had driven to Fulton in his pickup truck to meet his sister, and was on his way home, about 3:00 o'clock in the afternoon, when the wreck occurred. It was a dark drizzly day. He was driving at a rate of speed not over 25 miles an hour, and when he was about 100 yards from the

gravel road intersection he signalled a left turn, and kept his hand out about 50 yards. He asked his sister, who was riding with him in the pickup truck, to look back to see whether there were any vehicles approaching from behind. He was asked by his own attorney, ''When you gave your signal, what did you do?'' His answer was, ''I looked in the side road I was turning into, and when I looked again the truck was on me.'' He stated that when he turned back and saw the truck coming, it was probably 75 or 100 feet from him, and was approaching ''at a rapid rate of speed.'' He stated that the left front wheel of his pickup truck was approximately 12 inches over the center line of the highway when the two vehicles collided. He was driving about 15 miles an hour before he crossed over the center line. He was asked, ''Did you hit him or he hit you?'' His answer was, ''I don't know how you would call it, I got pulled over the line before I seen him, and the hit happened before I could get out of his way.'' Williams stated that the left front fender of the pickup truck was torn off and the left front spring was broken. Williams stated that he could have seen about 300 yards up the road, but he did not see the approaching truck until he looked into the side road and then looked back. He was asked on redirect examination, ''Did you drive into Mr. Cobb purposely?'' His answer was, ''No, I did not. * * * I just made the mistake of getting over the center line without seeing him, and he didn't give me a chance to get back.'' Williams' sister, Mrs. W. L. Enlow, who was riding in the pickup truck with him, corroborated his statement relating to the collision. She stated that the coal truck was running at a rate of speed not less than 60 miles per hour.

The first points argued by the appellant's attorney as ground for reversal of the judgment of the lower court are that the verdict of the jury was contrary to the overwhelming weight of the evidence, and that the court erred in overruling the appellant's motion for a new trial.

██ ██ We think that the verdict of the jury is contrary to the overwhelming weight of the evidence, and that the court erred in overruling the plaintiff's motion for a new trial. The appellees' own testimony shows that he failed to keep a proper lookout, and that he was negligent in failing to comply with Section 8196, Code of 1942, which provides that: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard. * * *." The appellee said that "I looked in the side road that I was turning into, and when I looked again the truck was on me." When he saw the truck coming, it was 75 or 100 feet from him. It was the duty of the appellee to maintain a proper lookout for on-coming vehicles before undertaking to execute a left turn into the gravel road. The highway was straight for a distance of a quarter of a mile, and the appellee himself testified that he could have seen 300 yards up the road. It was the duty of the appellee to yield the right of way to the on-coming coal truck, and not to undertake to make a left turn at a time when the coal truck was so close to the intersection as to constitute an immediate hazard.

██ ██ It is argued on behalf of the appellee, however, that the visibility was poor, and that the driver of the coal truck was negligent in driving at an excessive rate of speed, in failing to blow his horn, and in failing to slow down as he approached the intersection. But contributory negligence under the statute, Section 1454, Code of 1942, does not constitute a bar to the plaintiff's right of recovery. And the fact that the plaintiff may have been guilty of contributory negligence, if it were a fact, did not bar his right to recovery in this case, although the amount of damages which he might otherwise have been entitled to recover would have been diminished in proportion to the amount of negligence, if any, attributal to him.

■■■ It is next argued that the court erred in granting the defendant's instructions Nos. 2, 4, 5 and 6.

In the defendant's instruction No. 2 the jury was told that "it was the duty of the plaintiff in driving on the highway at the time in question to maintain a lookout for all persons who may be on or about to cross the highway on which he was traveling, and use every reasonable precaution to avoid injury or damage to such person, and that if the jury believe that he failed to do so, and solely as the proximate cause thereof, the collision occurred, they should find for the defendant." This instruction in our opinion was erroneous for the reason that the evidence would not support a finding that the plaintiff's negligence was the sole proximate cause of the collision. The instruction should not have been granted in the form requested.

■■ ■ In the defendant's instruction No. 4 the jury was told that "motorists on through highways have no right to proceed on the assumption that they have the right of way at an undiminished speed, and that those who have first arrived and are about to cross at an intersection must yield so long as the driver on the through highway has appeared within sight and regardless of speed." This instruction in our opinion is misleading and should not have been granted for the reason that the instruction was based upon the assumption that the defendant was "about to cross at an intersection" when the proof showed that the defendant was not "about to cross at an intersection", but was about to make a left turn on a through highway that he was traveling.

Complaint is also made of the defendant's instructions No. 5 and No. 6, but both of those instructions contain substantially correct statements of abstract principles of law.

Because of the errors mentioned above the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Arrington* and *Gillespie, JJ.,*
concur.