JUAN RAMÓN ACOSTA VARGAS ET AL., Plaintiffs and Appellees, *v.* JUAN ANGEL TIÓ ET AL., Defendants and Appellants. FLAVIO IRIZARRY RODRÍGUEZ ET AL., Plaintiffs, Appellants, and Appellees, *v.* ABEL ORTIZ CANCEL ET AL., Defendants, Appellees, and Appellants.

Nos. 393, 394. Decided February 11, 1963.

*Enrique Báez García* for defendants and appellants in case No. 393 and for defendants, appellees, and appellants in case No. 394. *Luis A. Negrón López* for plaintiffs and appellees in case No. 393. *Yamil Galib Frangie* and *Luis María Capó* for plaintiffs, appellants, and appellees in case No. 394.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

One killed and three injured, one of them seriously, was the tragic balance of an accident which occurred on March 7, 1959, about 8 p.m., on the road from Lajas to the ward of La Parguera when a station wagon operated by Flavio Irizarry collided against the rear of a truck-trailer owned by

defendant Juan Angel Tió which was parked on the shoulder of that public highway. The relatives of the deceased and the persons injured filed separate claims for damages against the truck owner and his insurance company, and after holding the corresponding trial, for which purposes the actions were consolidated, the trial court determined that there had been negligence both on the part of the operator of the wagon—which it attributed to plaintiff's predecessor and to the other claimants—and on the part of the driver of the truck-trailer and in its judgment it reduced the compensation awarded in the corresponding proportion.

For the purposes of the petitions for review, the parties did not include the transcript of the evidence filed in the record on review—see Rules 54.1, 54.2 and 54.3 of the Rules of Civil Procedure of 1958, 32 L.P.R.A. (Supp. 1962, at 163-164)—for which reason we must presume that they accept without reservation the factual situation determined by the trial judge. In its pertinent part it reads as follows:

"1. On March 7, 1959, plaintiff Flavio Irizarry, who at the time was a bachelor 25 years of age, while operating his 1953 Chevrolet station wagon collided against the rear of a truck-trailer owned by defendant Juan Angel Tió which was parked on the Lajas-La Parguera road.

"2. The accident occurred about 8 p.m. and at that moment plaintiff was accompanied in the wagon by Hermenegildo Acosta, who was seated next to the driver in the front seat and was killed, and in the rear seat were Segundo Cruz, Nelson Irizarry, and Etanislao Rodríguez. The persons riding in that wagon had been together since 4 or 5 p.m. drinking beer in different *cafetines,* including specifically the driver of the vehicle, plaintiff Flavio Irizarry, who had had several beers with his friends.

"3. The truck-trailer rammed by Flavio Irizarry is shown in the photographs which constitute plaintiffs' exhibits 2 and 3. As may be seen in those photographs, the body was made of steel with the rear part completely closed upward, and when the accident occurred the trailer was loaded with 22 tons of sugar cane. The parked truck was looking south, in the same direction in which plaintiff's wagon was traveling, with the right wheels

away off the pavement and the left wheels on the pavement, so that the body occupied most of the right half of the pavement, the width of which at that place is about 19 or 20 feet.

"4. The trailer in question had been parked at that place at 5 p.m. by the driver, who was an employee of defendant Juan Angel Tió, and was at that moment acting as defendant's employee transporting sugar cane owned by defendant, upon instructions of the mechanic of Juan Angel Tió, since on the way to Central Guánica the motor of the truck failed. The truck was parked on the right-hand side of the road looking south, so that the trailer occupied most of the right lane of the pavement despite the fact that only a few meters ahead there was a hoist and a loading place belonging to defendant where the truck could have been parked for repairs and kept away from the road.

"5. When the accident occurred the truck was standing at that place without any lights on, although a light on the outside of a small house which may be seen in the photograph presented by plaintiffs as their exhibit 10 shed some light on the rear of the trailer. The accident which gave rise to these claims was due to the fact that plaintiff Flavio Irizarry did not discover the presence of this truck at that place in time enough to apply the brakes, and that the vehicle occupied almost the entire right-hand side in the direction in which plaintiff Flavio Irizarry was driving his wagon that night, and also to the fact that Flavio Irizarry's visibility of the truck on the road was impaired by the fact that as he drew near the truck he was momentarily dazzled by the bright lights of another vehicle which was coming in the opposite direction by the side of the trailer.

"6. Judging by the force of the impact, the inescapable conclusion is that at the time of the accident plaintiff Flavio Irizarry must have been driving the wagon at excessive speed, otherwise if it was traveling at moderate speed plaintiff must have been completely inattentive or with his eyes and senses quite dulled by the effects of the liquor. (We believe that it is most probable that these three circumstances must have been present, since there was no evidence that plaintiff Flavio Irizarry would have applied the brakes and stopped the vehicle before running into the truck.) As a result of the impact the entire hood of the wagon driven by plaintiff Flavio Irizarry was embedded under the rear of the body of the truck with the en-

tire front completely smashed, as may be seen in exhibit D, the force of the impact having bent inward the steel bar which is used in those trucks to carry the spare tire, as may be seen in the photograph which constitutes plaintiffs' exhibits 3 and 4. The impact also pushed the truck loaded with 22 tons of sugar cane about one foot and a half forward.

"7. Plaintiff Flavio Irizarry testified that when the accident occurred he was driving about 30 miles an hour and that his wagon had good lights, and that although he slackened the speed when he saw the oncoming car with bright lights he never saw the truck before the impact, the implication being that he did not try to stop to avoid the collision. However, another witness who was sitting in the rear seat of the wagon and whose testimony deserved credit testified that he noticed the presence of the truck on the road when they were about 50 meters away. In the inspection made by the undersigned judge more or less at the time of the accident we were able to verify, driving our own car at a speed of about 30 miles an hour (our car is a five-year old Ford the lights of which are not very strong), that as we approached the truck at the place of the accident, while a vehicle with bright lights is traveling in the opposite direction, the rear of the truck which has no lights on, becomes visible from a distance of 25 meters, and the judge was able to stop his car to avoid colliding with the truck."

Considering the findings of fact copied, the trial court made the following conclusions of law:

"1. In view of the foregoing facts, we are of the opinion that the accident in this case was due to the negligence of the driver of the truck owned by defendant Juan Angel Tió, who left it standing on this road without any lights, as well as to the negligence of plaintiff Flavio Irizarry himself in operating his wagon under the influence of liquor at excessive speed or without being on the alert for discernible objects which might appear on the road, without reducing the speed sufficiently upon approaching the oncoming vehicle with bright lights, so that he could have had time to stop upon noticing the presence of the truck on the road and avoid the accident.

"Although it is obvious that the parking of this truck-trailer in that part of the road, without lights, was an act of negligence per se, § *12(g)* of Act No. 279 of April 5, 1946, as amended;

*Lloréns* v. *Lozada,* 73 P.R.R. 260, 265, we are of the opinion that if plaintiff Flavio Irizarry had been driving at moderate speed on that completely straight road without being under the influence of liquor and on the lookout for any discernible objects which might appear on the road, and that if plaintiff had taken the precaution to reduce the speed of his vehicle considerably as he approached the oncoming car, the lights of which blinded him, he could have discovered the presence of the truck on the road, without lights, sufficiently in advance to apply the brakes and avoid the accident, or at least to minimize considerably the force of the impact. (The fact that plaintiff Flavio Irizarry did not apply the brakes and his testimony that he did not see the truck at all are uncontrovertible evidence that he was driving too fast or was completely inattentive at the time of the accident.) And it seems clear that plaintiff was guilty of contributory negligence in failing to observe these safety rules required by common sense and the judicial doctrines, and that he is as liable as the defendant for the damages resulting from the accident. 5A Am. Jur. 434, 436, § 332; *Paniagua* v. *Transportation Authority,* 69 P.R.R. 121; *Portalatín* v. *Alers,* 69 P.R.R. 697.

"2. It having been established by the evidence that the deceased Hermenegildo Acosta and plaintiff Flavio Irizarry and the latter's companions had been drinking together since the afternoon, it is clear that Flavio Irizarry's contributory negligence is likewise imputable to the deceased, Hermenegildo Acosta, since there is sufficient basis in the evidence to conclude validly that when the accident occurred Flavio Irizarry was operating the wagon carelessly, due in part to the influence of liquor which they had imbibed since the afternoon, and that the deceased had full knowledge of that fact, *Acosta* v. *Crespo,* 70 P.R.R. 223, 234, wherefore the amount of compensation which the relatives of Hermenegildo Acosta are entitled to receive should be reduced. (All the plaintiffs, relatives of Hermenegildo Acosta, are entitled to compensation, *Vázquez* v. *People,* 76 P.R.R. 556; *Hernández* v. *Fournier,* 80 P.R.R. 94), in proportion to his own contributory negligence and that of plaintiff Flavio Irizarry, whose contributory negligence is in our opinion as great as that of defendant.

"3. In view of the foregoing conclusions as to the magnitude of the contributory negligence of Flavio Irizarry and the de-

ceased, Hermenegildo Acosta, the amount of compensation which plaintiffs are entitled to receive will be reduced by 50 per cent. Section 1802 of the Civil Code."

I

In the petitions under our consideration both appellants challenge the adjudication of the trial court which determined, as to the cause of the damage, the existence of concurrence of negligence, and urge that, on the basis of their particular interpretation of the facts, they be exonerated from any negligence with the inevitable consequence of placing all liability on the adverse party. Before considering these issues it is necessary to determine the negligent acts attributed to each of them. To the operator of the truck-trailer, parking without lights and occupying most of the right lane of the maintraveled part of a public highway, despite the fact that at a short distance away there was a parking place which did not involve a situation of potential risk for other vehicles traveling on that road; to the operator of the wagon, driving under the influence of liquor at excessive speed or carelessly, without being on the lookout for discernible objects, or failing to slow down when he was blinded by the bright lights of another oncoming vehicle, as a result of which he did not have sufficient time to apply the brakes and avoid the collision with the standing truck, or at least to minimize the force of the impact.

1. (a) Relying on the wording of the initial portion of the second paragraph of the first conclusion of law made by the trial court (*ante*, pp. 252 and 253), defendants-appellants urge that the proximate cause of the accident was the conduct of the driver of the wagon who should have discovered the presence of the standing truck and taken the necessary precautions to avoid the collision. Reading as a whole all the findings of fact and the conclusions of law, we are led to the inevitable conclusion that, notwithstanding the unfortunate wording of this portion picked out by defendant, the trial

judge was of the opinion at all times that both drivers were responsible for the cause of the accident. So much so that the first paragraph of the same conclusion invoked unequivocally states that the accident was due "to the negligence of the driver of the truck owned by defendant Juan Angel Tió, who left it standing on this road without any lights, as well as to the negligence of plaintiff Flavio Irizarry himself." Furthermore, our impression is that the purpose of that portion was to distinguish the case at bar from that of *Lloréns* v. *Lozada*, 73 P.R.R. 260 (1952), where we refused to hold that the driver of an automobile who ran into a truck parked at night without rear lights to warn of its presence was guilty of contributory negligence because "he could by reasonable care have seen the truck in time to avoid the collision" (at p. 265), since the concurring circumstances—he was driving at moderate speed, the truck blended with the scenery, and he did not see it in time because his attention was excusably diverted by the lights of another oncoming car—did not warrant the application of that rule. In the instant case, unlike that of Lloréns, the trial judge determined precisely that the circumstances under which negligent conduct could be attributed to the driver of the wagon were present—driving at excessive speed or carelessly, under the influence of liquor. That is why the court says at the end of that portion of the paragraph on which defendants so vehemently rely that the failure of the driver of the wagon to observe the safety rules required by common sense and the authorities constitutes negligent conduct, "and that he is as liable as the defendant for the damages resulting from this accident." *Portalatín* v. *Alers*, 69 P.R.R. 697 (1949), and the dissenting opinion in *Paniagua* v. *Transportation Authority*, 69 P.R.R. 121 (1948), do not support at all the claim of defendants-appellants that they should be exempted from liability, since in both the failure of the driver of a vehicle to discover the presence of another parked vehicle without

lights is characterized as contributory negligence, but not as the only cause of the accident. *Cf. Carrio* v. *Compañía Insular de Transporte, Inc.*, 49 P.R.R. 39 (1935).

(b) Defendants also urge that it was error to attribute negligence to them, since even conceding that the parked truck had no lights, it was established that a light bulb on the outside of a small house situated on the opposite side of the road "shed some light on the rear of the trailer." To pretend to be exempted from any liability on the basis of that contention, despite the emphatic statement made in the opinion in *Lloréns* that the failure to provide a truck with a rear light after sunset, in violation of § 12(*g*) of Act No. 279 of April 5, 1946, 9 L.P.R.A. § 182,[1] constitutes negligence per se, is to go too far. *People* v. *Vargas*, 30 P.R.R. 474 (1922), referring to § 8(*a*) of Act No. 75 of April 13, 1916 (Sess. Laws, p. 140), the wording of which is similar to that of § 12(*g*) *supra*, points out that the law not only orders that precaution be taken to provide sufficient lights, but stated the reason therefor—"it is natural that lights should be displayed from the automobile itself so that all persons may take notice that it is on the street or highway"—and that, therefore, if at the place there is "*light sufficient*" to make the automobile visible in every direction, then the purpose of the law is met and no offense is committed.[2] As may be readily seen, and even assuming that this opinion were applicable in an action to determine criminal liability, the situation of facts is different because in that case it is said that there be "sufficient

[1] "No motor vehicle shall be left after sunset on any public road unless it is provided with sufficient lights, visible from all directions, in order to avoid danger to persons using said road."

The existing provision, § 5-709(a) of Act No. 141 of July 20, 1960, 9 L.P.R.A. § 1019 (Supp. 1962, at 272) reads: "At night no person shall park a vehicle upon a public highway which has no public lighting when said vehicle has not lighted its head lamps and rear lights and any other lights required for such purpose by the Secretary under the provisions of this act and its regulations."

[2] See *Arreche* v. *P. R. Ry., Lt. & Power Co.*, 40 P.R.R. 286, 290 (1929).

light"—the automobile was parked in an urban zone, near a theater and in a lighted street of the town—while in the instant case it can merely be asserted that a light bulb in a small house near the place shed "some light" on a truck parked in an open rural zone. Furthermore, an examination of the photographs admitted in evidence leads to the inescapable conclusion that the purposes of the law were not fully accomplished with the weak and faint light—across the road —of a small bulb of the neighboring house. The dimensions of the truck-trailer and the shape of its construction on the rear (exhibit 2 of plaintiff), coupled with the place where the bulb was placed—practically level with the roof which slopes down in front serving as a shade (exhibits 13 of plaintiff and C of defendants)—thus corroborate it.

It is well to note further that § 8(*a*), under which *People* v. *Vargas*, *supra*, was decided, does not contain an express provision as does § 12(*g*), which was in force at the time of the facts under consideration and which, after requiring that a vehicle parked after sunset be provided with sufficient lights, specifically requires further that "on such public highways as may have sufficient space on both sides therefor, the motor vehicle shall be parked outside the shoulder of the roadway." And we have seen that, according to the findings of fact, the truck was so parked that it occupied practically the right lane of the road.[3]

---

[3] We invite attention to the provisions of the General Traffic Regulations for State Routes approved November 14, 1957, which governed at the time of the accident, respecting parking on rural roads and disabled vehicles, 9 R.&R.P.R. § § 187-6 and 187-7:

"187-6. *Stopping, standing or parking on rural roads*

"(a) Upon any highway outside of a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or maintraveled part of the highway when it is praticable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the

2. (a) Plaintiff-appellant Flavio Irizarry Rodríguez, driver of the wagon, on his part contends that the finding that his conduct was negligent is untenable because it is based on an experiment performed by the trial judge himself at the scene of the occurrence in an attempt to reproduce the circumstances present when the accident occurred. In *Cedeño* v. *Tropical City Industries*, 71 P.R.R. 586 (1950), in stating that the admission in evidence of the result of an experiment performed out of court rests within the sound discretion of the court, we established that it is necessary to prove that it was performed under circumstances essentially alike or similar to those existing at the time the fact in question occurred (*Publix Cab Co.* v. *Colorado Nat. Bank*, 338 P.2d 702 (Colo. 1959); *Odell* v. *Frueh*, 304 P.2d 45 (Cal. 1957)), although they need not be identical (*Beresford* v. *Pacific Gas & Electric Co.*, 290 P.2d 498 (Cal. 1955)). See Annotation, *Admissibility of experimental evidence to show visibility or line of vision*, 78 A.L.R.2d 152 (1961). A frequent objection to the admission of this experimental evidence is that the mental attitude of the person conducting the experiment is necessarily different from that of the persons involved in the occurrence, since he is focusing his attention on a particular fact known, or at least to the exclusion of other incidents or objects which

---

free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of sixty (60) meters in each direction upon such highway.

"(b) This section shall not apply to the driver of any vehicle which is disabled while on the paved or maintraveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

"187-7. *Disabled vehicles*

"Any disabled vehicle that is required to stop upon any state route and is unable to continue, shall be removed from the state route within one (1) hour."

It appears from the evidence that defendant committed the following violations: (a) parking of the truck on the maintraveled part when he could have parked it outside the paved part; (b) failure to remove the disabled vehicle within a period of one hour after parking it.

normally he would be called upon to include in his attention if he were not already cautioned. *Complete Auto Transit* v. *Floyd*, 249 F.2d 396, 399 (C.A. 5, 1957), *cert. denied*, 356 U.S. 949 (1958); *Potts* v. *Bird*, 27 P.2d 745, 748 (Colo. 1933); *Palmer* v. *Oregon Short Line R. Co.*, 98 Pac. 689, 700 (Utah 1908); *City of Ord* v. *Nash*, 69 N.W. 964, 966 (Neb. 1897); *Handley* v. *Erb*, 41 N.E.2d 222 (Ill. 1942); *Lane* v. *Hampton*, 87 S.E.2d 803 (Va. 1955); *contra*, *Norfolk & W. Ry. Co.* v. *Henderson*, 111 S.E. 277 (Va. 1922); *Carpenter* v. *Kurn*, 157 S.W.2d 213 (Mo. 1941); *Griggs* v. *Kansas City Rys. Co.*, 228 S.W. 508 (Mo. 1920). It is precisely pointed out that since the commencement of the experiment the judge already had knowledge of the exact place where the truck was parked and that eventually he would be dazzled by the lights of an oncoming car. Truly the result of this experiment has little probative value. However, had the error assigned been committed, it would not be sufficient to set aside the finding of fact challenged, since it is not based on the experiment conducted alone, as may be seen from a reading as a whole of all the facts found proved, and further, because the negligence attributed to appellant did not only consist in failing to discover in time the presence of the standing truck, but also in driving carelessly, probably at excessive speed, and what is more controlling, under the influence of alcoholic beverages.

(b) Lastly, and in order to dispose of this aspect of the petitions, the contention that the other plaintiffs-appellants—the passengers who were injured—were not negligent, is without merit. All the circumstances enumerated in *Acosta* v. *Crespo*, 70 P.R.R. 223, 234 (1949), were present in order to establish that a person who accompanies a driver is negligent if (1) the driver was intoxicated or under the influence of liquor to such an extent as to make him a careless or incompetent driver; (2) the passenger knew or should have known the driver's condition; and (3) the drunkenness

or driving under the influence of liquor was a contributory factor in bringing about the accident. See, for similarity to the present case, *Todd* v. *Jackson*, 283 F.2d 371 (C.A.D.C. 1960); *Warner* v. *Home Indemnity Co.*, 123 So.2d 518 (La. 1960); *Elba* v. *Thomas*, 59 So.2d 732 (La. 1952); *Enos* v. *Montoya*, 322 P.2d 472 (Cal. 1958); *Arrington* v. *Graham*, 124 S.E.2d 199 (Va. 1962).

II

For the express purpose [4] of eliminating the judicial aberration resulting from the application and consideration of the doctrine of contributory negligence as absolute defense in a claim for damages,[5] the Legislative Assembly enacted Act No. 28 of June 9, 1956, which amended § 1802 of the Civil Code, 1930 ed., 31 L.P.R.A. § 5141, and incorporated the doctrine known as comparative negligence. To that effect a sentence was added to that section: "Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity."

In view of the broad exposition on the origin and development of the doctrine of comparative negligence which appears in the opinion delivered by Mr. Justice Ortiz in *Irizarry* v. *People*, 75 P.R.R. 740, 748–87 (1954), we need not consider these details which would otherwise be indispensable for a better consideration of this case.[6] We will merely discuss

---

[4] Journal of Proceedings 371 and 1320 (1956).

[5] For an examination of the situation in Puerto Rico as a result of the application of this doctrine of contributory negligence, see *Irizarry* v. *People*, 75 P.R.R. 740, 778–83 (1954), and *Ramos* v. *Carlo*, 85 P.R.R. 337 (1962).

[6] For those interested in the matter, see VELÁZQUEZ, *Acotaciones al Nuevo Artículo 1802 del Código Civil*, 17 Rev. Col. Abo. P. R. 7 (1956); ESTRELLA, *La Responsabilidad Civil Extracontractual Ante el Repudio de la "Contributory Negligence,"* 17 Rev. Col. Abo. P.R. 21 (1956); GADEA PICÓ, *La Enmienda al 1802*, 17 Rev. Col. Abo. P.R. 49 (1956); ORTIZ, *La Negligencia o Causación Comparada*, 17 Rev. Col. Abo. P. R. 61 (1956); MALONEY, *From Contributory to Comparative Negligence: A Needed Law*

the only question actually raised by defendants-appellants concerning the adequate formula for making the proportional distribution of the damages after the concurrence of negligence is established.[7]

Defendants-appellants formulate the issue in the alternative. They suggest that since in their opinion the negligence of plaintiffs, especially that of the driver of the wagon, was gross, and the negligence attributable, if any, to the driver of the truck-trailer, is slight, the action should be dismissed because the preponderance of negligence lies in the plaintiffs. Or that, admitting the conclusion of law that both negligence contributed in the same degree to the occurrence of the accident, compensation should be awarded.

Professor PROSSER [8] refers to the rule on gross negligence and slight negligence which appears in the decisions of the courts of the state of Illinois as of 1858. In effect, in order to mitigate the rigor of the doctrine of contributory negligence which deprived claimant of any indemnity irrespective of his degree of negligence, there emerged the doctrine that the negligence of the plaintiff would not bar his recovery if it was slight, while the negligence of the defendant was gross

---

*Reform*, 11 U. Fla. L. Rev. 135 (1958); PROSSER, *Comparative Negligence* 51 Mich. L. Rev. 464 (1953); PHILBRICK, *Loss Apportionment in Negligence Cases*, 99 U. Pa. L. Rev. 572, 766 (1951); TURK, *Comparative Negligence on the March*, 28 Chi.-Kent L. Rev. 189, 304 (1950); MALONE, *Comparative Negligence—Louisiana's Forgotten Heritage*, 6 La. L. Rev. 125 (1945); GREGORY, *Loss Distribution by Comparative Negligence*, 21 Minn. L. Rev. 1 (1936); LOWNDES, *Contributory Negligence*, 22 Geo. L. J. 674 (1934); MOLE AND WILSON, *A Study of Comparative Negligence*, 17 Cornell L. Q. 333, 604 (1932); PROSSER, Torts 296-99 (2d ed. 1955); 2 HARPER AND JAMES, The Law of Torts 1236–41, § 22.11 (1956); PROSSER AND SMITH, Torts, Cases and Materials 577–82 (3d ed. 1962); GREEN, Cases on the Law of Torts 543, 592-98 (1957).

[7] See, in general, GREGORY, *Legislative Loss Distribution in Negligence Actions* (Univ. of Chicago Press, 1936); PONS, JR., *Reparto de los Daños Bajo la Doctrina de Negligencia Comparada*, 19 Rev. Col. Abo. P. R. 179 (1959); ESTRELLA, *supra*, p. 31 *et seq.*

[8] *Selected Topics on the Law of Torts* (University of Michigan Law School, 1953), pp. 30–39; 51 Mich. L. Rev. 465 (1953).

in comparison.[9] No attempt was made to divide the damages, and the effect of the application of this "modality" of the comparative negligence was to permit full recovery of the damages sustained by the plaintiff. However, the serious practical inconveniences which this rule entailed for the determination under the varied situations of fact in which it was invoked accelerated its disappearance from the scene of extracontractual liability. MALONE, *The Formative Era of Contributory Negligence*, 41 Ill. L. Rev. 151 (1946); GREEN, *Illinois Negligence Law*, 39 Ill. L. Rev. 36, 117, 197 (1944); MOLE AND WILSON, *A Study of Comparative Negligence*, 17 Cornell L. Q. 333, 604 (1932). The existing statutes in Nebraska and Wisconsin expressly permit the comparison of negligence for the distribution of damages: that of Nebraska refers to the slight negligence of plaintiff in comparison with the gross negligence of defendant (2 Neb. R.R.S. 1943, § 25–1151, p. 510); *Brackman* v. *Brackman*, 100 N.W.2d 774 (Neb. 1960); *Kirchner* v. *Gast*, 100 N.W.2d 65 (Neb. 1959); *Bezdek* v. *Patrick*, 94 N.W.2d 482 (Neb. 1959); *Fairchild* v. *Sorenson*, 87 N.W.2d 235 (Neb. 1957); that of Wisconsin refers to the fact that the negligence of the plaintiff is not greater than that of the defendant (39 W.S.A. 331.045 at p. 341); *Van Wie* v. *Hill*, 112 N.W.2d 168 (Wis. 1962); *Meyer* v. *Val-Lo-Will Farms, Inc.* 111 N.W.2d 500 (Wis. 1961); *Becker* v. *City of Milwaukee*, 99 N.W.2d 804 (Wis. 1959); 1939 Wis. L. Rev. 530; 1939 Wis. L. Rev. 427; 1933 Wis. L. Rev. 530. Irrespective of whether the trend of our law rejects that interpretation,[10] § 1802 of the Civil Code does not contain such limitation and we can not insert it in its text. Moreover, having rejected the contention of defend-

---

[9] *Galena & Chicago Union R. Co.* v. *Jacobs*, 20 Ill. 478 (1858), reported in GREEN, Cases on the Law of Torts 543 (1957); *City of Chicago* v. *Stearns*, 105 Ill. 554 (1883); *Schmidt* v. *Chicago, etc.*, 83 Ill. 405 (1876), and other cases cited in footnote 111 and 112 of the article mentioned by Professor Prosser.

[10] See § 1056 of the Civil Code, 1930 ed., 31 L.P.R.A. § 3020, referring to mitigation of liability; *Ramos* v. *Carlo*, *supra*.

ants-appellants and upheld the trial court's determination on the equal attribution of liability to both drivers, any further discussion would be idle.

The other formula suggested by defendants-appellants —fixing of compensation on the basis of the proportion of negligence of one of the litigants in comparison with that of the other—can not be upheld either in the light of the wording of our statutory provision which expressly provides that the concurrent imprudence of the party aggrieved only entails a *reduction* of the indemnity. Once more the concept of mitigation of liability to which we have made reference becomes significant. PROSSER, *op. cit.* at p. 45, criticizes this formula of compensation for its lack of realism and little scientific basis.[11] In Mississippi, where the wording of the provision on comparative negligence is substantially the same as ours (Miss. Code 1942, § 1454), the formula used by the trial judge has been adopted. *Shows* v. *City of Hattiesburg*, 97 So.2d 366 (Miss. 1957); *Wells* v. *Bennett*, 90 So.2d 199 (Miss. 1956); *Cobb* v. *Williams*, 90 So.2d 17 (Miss. 1956); *McClellan* v. *Illinois Cent. R. Co.*, 37 So.2d 738 (Miss. 1948); *Yazoo & M.V.R.* v. *Williams*, 74 So. 835 (1917); *Yazoo & M.V.R.* v. *Carroll*, 60 So. 1013 (1913).

For the purpose of guiding the trial judges in the difficult task of solving the numerous claims for damages which are handled annually, we will say definitively that where the concurrence of negligence has been established as the cause of the damage defendant shall be bound to compensate that part of the damage in proportion to his own negligence. Thus, the liability will be determined, in the last analysis, in accordance with the seriousness of the respective negligence. As a matter of fact, this Court has been doing so in the few cases in which it has confronted the

---

[11] This rule prevails in Wisconsin, but has been strongly criticized. CAMPBELL, *Ten Years of Comparative Negligence*, 1941 Wis. L. Rev. 289; CAMPBELL, *Wisconsin's Comparative Negligence Law*, 7 Wis. L. Rev. 222 (1932).

problem: *Viñas* v. *Pueblo Supermarket*, 86 P.R.R. 31 (1962); *Flores* v. *F. & J. M. Carrera, Inc.*, 83 P.R.R. 320 (1961). The error assigned was not committed.

III

After reducing the amount of the indemnity in proportion to the negligence attributed to plaintiff Flavio Irizarry, the trial court rendered judgment for him in the sum of $8,200. In other words, it assessed the total damages sustained by him at the sum of $16,400, including therein $800 for total loss of the vehicle and $600 of income which he failed to receive from his cabinet-work business. A simple mathematical calculation indicates that it assessed the damages caused by physical and mental suffering at the sum of $15,000.

In 1959 plaintiff Flavio Irizarry was a young man 25 years of age, a student and a veteran of the Armed Forces. Let the trial court itself give us a pathetic and touching picture of the result of the accident:

> ". . . plaintiff Flavio Irizarry received serious internal injuries and was confined that same evening in the Hospital de la Concepción of San Germán, where he remained for about 33 days. Plaintiff sustained the rupture of a kidney, also the fracture of the ninth right rib and of the right transverse of the first lumbar vertebra, as well as a slight superficial wound between the eyebrows and several contusions and lacerations. When plaintiff arrived at Hospital de la Concepción he was semiconscious, in a state of shock, with a profuse internal hemorrhage, it having been necessary to perform an emergency operation that same night in order to remove the affected kidney. During the first two weeks of confinement he was under the effects of sedatives and was not fully conscious of what was going on. During the first days of confinement a serious pleurisy complication set in and then an abscess of the operative cicatrix which it was necessary to leave open with drainage. It was also necessary to perform another operation in order to remove the tumor. After he was released, Flavio Irizarry had to remain in bed in his home for several months because of his

bad health when he left the hospital, and although he has not had further complications as to the functions of the other kidney, it is obvious that the functions and resistance of his kidneys have been limited by the loss of one of those organs."

Although ordinarily we will not interfere with the trier's discretion in the evaluation of the damages, we believe that in the present case the sum awarded, considering all the circumstances pointed out, is clearly inadequate and should be increased substantially. We will fix the damages at $30,000, subject to a proportional reduction commensurate with the concurrence of negligence.

In view of the foregoing, judgment will be rendered increasing to $15,700 the compensation awarded to Flavio Irizarry Rodríguez, and as thus modified the judgment rendered by the Superior Court, Mayagüez Part, on August 26, 1960, will be affirmed.